JOHN I. CHAMBERS, Receiver,

*v.*

PATTIE S. PREWITT *et al.*

*Opinion filed April 21, 1898.*

1. SUBROGATION—*creditor may avail of security given by the debtor to his surety.* Where the purpose of a mortgage or other security, given by a debtor to his surety, is personal, and solely to indemnify such surety, the creditor can only avail of such mortgage or security by subrogation, claiming through the surety, and cannot therefore proceed until a remedy accrues to such surety by his being actually damnified or becoming liable for the debt.

2. TRUSTS—*when mortgage by debtor to surety creates a trust for benefit of creditor.* Where a mortgage is given by a debtor to his surety for the better security of his debt, or to provide the surety with means to pay it in case of the debtor's default, then, although the purpose is to indemnify the surety, a trust also attaches to the mortgage for the benefit of the creditor, which courts will enforce.

3. MORTGAGES—*defeasance clause most certainly indicates purpose of mortgage.* The purpose of a mortgage is most certainly manifested by the condition on which it is to become void, though other parts of the mortgage may be considered in connection with the defeasance clause, if necessary, in the ascertainment of its meaning.

4. SAME—*when mortgage to sureties creates trust in favor of unnamed creditors.* A mortgage by a debtor to the sureties on certain of his notes payable to a bank, which describes such notes but which provides that the mortgagees will reconvey on payment of the notes by the mortgagor, "together with any other sums" for which the mortgagees were liable as sureties for the mortgagor, creates a trust in favor of the unnamed creditors on whose claims the mortgagees were then sureties as well as in favor of the bank.

5. EVIDENCE—*extent to which parol evidence is admissible in construing mortgage.* Parol evidence cannot be considered to vary or contradict a mortgage, but is competent to identify the subject matter thereof referred to in general terms, or to show the situation, condition and mutual relations of the parties, to make clear the meaning of language used which would otherwise be uncertain.

6. RES JUDICATA—*that trustee was party to suit does not make decree binding on cestuis que trustent.* Creditors occupying the relation of *cestuis que trustent* as to a mortgage given by their debtor to his sureties, are not bound by a decree in a suit to which they were not made parties, by the fact that the mortgagees, who stand in the position of trustees for such creditors, were parties thereto.

*Chambers* v. *Prewitt,* 71 Ill. App. 119, affirmed.

WRIT OF ERROR to the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding.

EDWARD P. KIRBY, for plaintiff in error.

PATTON, HAMILTON & PATTON, for defendants in error.

Per CURIAM: The Appellate Court for the Third District affirmed the decree of the circuit court of Sangamon county in this case, and the following opinion, which expresses the views of this court in the case, was delivered by Mr. Justice PLEASANTS:

"In March, 1885, John P. Smith borrowed of George and Hiram Wilson, partners, $22,500, giving his notes therefor and executing a mortgage upon his farm of 770 acres, in Sangamon and Morgan counties, to secure their payment. Afterwards he became indebted to the Central Illinois Banking and Savings Association (commonly known as the Central Bank) of Jacksonville, on notes and overdrafts, for the payment of which his brothers, James D. and Lloyd B. Smith, were sureties, and which, on February 2, 1893, upon an accounting between the parties, were agreed to amount in all to $34,500. Thereupon he made his four notes,—one for $4500, at three months, and three for $10,000 each, at six, nine and twelve months, respectively, from that date, with interest at seven per cent, payable to his own order, which he endorsed and delivered to William E. Veitch, as cashier of said bank. In connection with the making and delivery of these notes, though at a later date,—April 13, 1893,— in pursuance of a previous agreement of the parties concerned, James D. and Lloyd B. Smith executed to the bank a separate contract guaranteeing their payment, and John P. Smith and wife executed to them a second mortgage of his said farm, the material parts of which are as follows:

" 'The mortgagors, John P. Smith and Anna Smith, his wife, mortgage and warrant to James D. Smith and Lloyd B. Smith to secure the payment of the following described promissory notes, to-wit, (here follows a description of the four notes given to the bank as above stated,) the following described real estate: (here follows a description of the lands,) all of which above described notes have by the maker, the said John P. Smith, been duly executed, endorsed and delivered to *bona fide* holders for valuable consideration, and the payment of each and all of which have been guaranteed to the holders thereof by the said James D. Smith and Lloyd B. Smith, and when each and all of which shall have been duly paid by said John P. Smith, together with any other sums for which said James D. Smith and Lloyd B. Smith, or either of them, may be liable, either as surety or guarantor of and for the said John P. Smith, the said James D. Smith and Lloyd B. Smith shall and will reconvey the said above described premises to the said John P. Smith, or to his heirs or assigns.

" 'Dated the 13th day of April, A. D. 1893.

J. P. SMITH,    [Seal.]<br>ANNA SMITH.    [Seal.]'

"This mortgage was delivered by the attorney for the bank, who prepared it and the guaranty contract, in the latter part of May, 1893, to the mortgagee, James D. Smith, at his house in Island Grove, Sangamon county, for his firm, and by him given back to the attorney to be deposited in the bank. Before and when it was delivered the mortgagor was indebted to appellees Pattie S. Prewitt, Annie L. Johnson and William M. Warren upon his notes held by them, respectively, on each of which the mortgagees were sureties; and these notes, together with those given to the bank, constituted the entire amount of his indebtedness.

"A bill was filed to the November term, 1893, of the circuit court of Sangamon county to foreclose the Wilson mortgage, to which the mortgagors and the second mortgagees were made parties defendant and duly served with process. While that suit was pending, appellant, Chambers, and William E. Veitch, who had been ap-

pointed receivers of the bank, obtained leave to be made defendants also, and filed with their answer a cross-bill against the complainant and all of the original defendants in the original bill. In the latter, as in their answer, they set up the several transactions above stated between John P. Smith, his brothers named and the bank; that none of the notes of said John P. Smith held by the bank had been paid; that the mortgage to his brothers was given especially to secure their payment, and had been re-delivered by the mortgagees to the bank for that purpose, and that the receivers hold said notes and mortgage as assets of the bank, with authority to institute suits for their collection; and prayed that an account be taken of the amount thereon, that they be subrogated to all the rights of said mortgagees, that John P. Smith be required to pay them the amount found due, and that in default thereof the mortgage be foreclosed, the land sold, the equities of the different parties interested determined, and the proceeds of the sale applied to the payment of said four notes in the order of their maturity.

"The original defendants failed to answer either the original or cross-bill, both of which were therefore taken as confessed by them, and on final hearing a decree was entered on December 16, 1893, finding the amount due on the Wilson mortgage to be as claimed and declaring it a first lien on the mortgaged premises, and on the cross-bill that the second mortgage was given for the benefit of the bank, subrogating the receivers to the rights of the mortgagees therein, ascertaining the amount due on the said four notes, and ordering that the premises be sold and the proceeds applied first to the satisfaction of the Wilson mortgage, and second to the payment of the amount found due on the four notes held by the receivers in the order of their maturity. The mortgaged premises were not of value sufficient to pay the mortgage debts. They were not sold under the decree, but the receivers obtained from John P. Smith a deed releasing his equity

of redemption in consideration of the surrender to him of
all the claims of the bank against him.

"At the September term, 1894, the appellees herein,
James D. Smith, Lloyd B. Smith, Pattie S. Prewitt, Anna
L. Johnson and William M. Warren, exhibited in the cir-
cuit court of Sangamon county their bill in chancery
against John P. Smith, Anna Smith, his wife, and the
receivers named, setting up the two mortgages, the de-
cree upon the bill and cross-bill in the Wilson case, the
conveyance from John P. Smith to the receivers and their
possession of the mortgaged premises, alleging that when
the second mortgage was executed the complainants
Prewitt, Johnson and Warren, respectively, were credit-
ors of the mortgagor on his notes upon which the mort-
gagees were liable as sureties, and under said mortgage
were entitled to share *pro rata* with the bank in the
proceeds of the mortgaged premises over and above the
amount necessary to satisfy the Wilson decree, and pray-
ing that an account be taken of the amounts so due them,
respectively, and a decree against John P. Smith for the
payment thereof, and that in default of such payment
the mortgaged lands be sold and the surplus proceeds,
after the payment of Wilson, be applied *pro rata* to the
amounts due to the bank and to said other creditors.
The defendant Smith was defaulted and the bill taken
*pro confesso* against him.   The receivers answered, con-
testing the claim of said complainants Prewitt, Johnson
and Warren.   In the meantime, under a stipulation be-
tween the complainants and defendants, part of the lands
were sold by the receivers, and certain notes given for
the purchase money placed in the hands of Edward P.
Kirby to await the final determination of the suit.   The
circuit court held that the complainants Prewitt, John-
son and Warren were entitled to share in the surplus pro-
ceeds, and directed Kirby to collect and pay over said
notes to them, respectively, *pro rata*.   Veitch having re-
signed, John I. Chambers was, by order of the court, per-

mitted to prosecute an appeal as receiver, alone, and accordingly he brings the record here for review.

"The contending parties were and are alike creditors of John P. Smith, for whose claims, respectively, his brothers, James D. and Lloyd B. Smith, were also liable as guarantors or sureties. In view of this contingent liability, and to protect them ultimately against loss by reason of it as far as he thereby might, he executed to them the mortgage in question. The creditors are seeking to reach this security as a means of satisfying their claims, the receiver, representing the bank, insisting upon priority and the others upon equality *pro rata*. It seems to be well settled that whether creditors can so avail of a mortgage or other security given by a debtor to his surety depends upon the purpose for which it is given. If that be purely personal, as only to indemnify the surety, they cannot do so until he is actually damnified or at least has become absolutely liable for the debts, for they must claim through him by subrogation, and until then he himself has no remedy upon it. (Brandt on Suretyship and Guaranty,—2d ed.—vol. 2, sec. 326; *Ohio Life Ins. Co.* v. *Reeder*, 18 Ohio, 46; *Osborn* v. *Noble*, 46 Miss. 449, and cases there cited.) But if given for the better security of the debts themselves, as for their payment by the principal debtor or to provide the surety with means to pay them in case of his default, then, although the purpose is also to indemnify the surety to the same extent, a trust attaches to the security for the benefit of the creditors indicated, to which the court will give effect. *Moses* v. *Murgatroyd*, 1 Johns. Ch. 119; *Paris* v. *Hulet*, 26 Vt.; *Homer* v. *Savings Bank*, 7 Conn. 484; *Osborn* v. *Noble, supra; Eastman* v. *Foster*, 8 Metc. 19; *Aldrich* v. *Blake*, 134 Mass. 582; *Plant* v. *Storey*, 136 Ind. 46; Brandt on S. & G. secs. 282-285.

"The controversy here is mainly over the construction of the mortgage. For appellant the contention is that it was given as security for the notes held by the Central

Bank, and only as indemnity to the sureties on the others; and appellees, admitting the provision for the bank notes as claimed, insist that the same was made for theirs.

"Appellant bases his construction upon the terms of the instrument, and the points of expression claimed to show a distinction made between these debts, as summarized by counsel, are, the full description of the bank notes only; the express statement that it was given to secure their payment; that they are the first mentioned; the definite statement of the liability of the mortgagees as sureties thereon, and the fact that no other obligations of the mortgagors are mentioned as actually existing. The truth of these recitals is undisputed, but so far as they may seem to distinguish the bank debt in its favor they are made insignificant by the parol proof, which shows that the mortgage was given at the instance of the bank alone, whose claim was more than three times as large as all the others combined; that it was drawn under the direction of its cashier, in the absence of the parties thereto and by its own attorney, who had its notes and so could describe them fully, and knew by information of the mortgagor that other notes against him were then outstanding on which his brothers were liable as sureties, but did not know any further particulars, and for that reason only, as he testified, did not put them in. John P. Smith testified that besides the notes involved in this suit there was no paper out against him on which his brothers were sureties. Other parol evidence, the admission of which was objected to and is assigned for error, was to the effect that for a considerable time before the instrument in question was executed the cashier and attorney were pressing Smith to make a mortgage directly to the bank to secure its notes, which he persistently refused to do, on the sole ground that he was indebted on other paper, also signed by his said brothers as sureties, which he should secure as well, but expressed his willing-

ness to execute such a mortgage as he now understands this to be; that when it was shown to him by the cashier he made some objection and wanted explanation, for which he was referred to the attorney, who testified that the explanation wanted was of the defeasance, and that Smith asked him 'whether it furnished indemnity and security for all his paper.' He must have known that his answer was understood to be affirmative, for upon it Smith consented to execute the mortgage as it was drawn and now appears.

"If, and so far as, this or any parol evidence tended to vary or contradict the plain meaning of the written instrument, it was not proper to be considered, and there is no presumption that any such was considered by the court; but so far as it tended to identify the subject matter referred to by it in general terms, or, by showing the situation, condition and mutual relations of the parties to it, makes clear their meaning by the language used, which from it alone might be uncertain, it would be competent. The court, in order the better to understand it, in such case will seek to place itself in their situation. (*Wilson* v. *Roots*, 119 Ill. 379; *Burgess* v. *Badger*, 124 id. 288; *Bank* v. *Estate of Waterman*, 30 Ill. App. 535.) The bank was not a party to it, but claimed it had a certain meaning to its advantage. Could it well complain of the court's knowing, and holding as the true construction, what the parties themselves alike intended and understood by it, if it was reasonable, though not clear from the language itself? (Ibid.)

"But we see nothing uncertain in the terms of the contract. Its meaning seems unmistakable, needing no aid upon any point from parol evidence and making no room for construction. With that meaning the testimony objected to is entirely in harmony. The expressions referred to and relied on as favoring the bank's view of it could not give to that creditor any priority of right over others whose claims are by it placed in the same cate-

gory, so far as respects the moral obligation, legal liability and actual intention of the mortgagor.

"The purpose of a mortgage is most certainly manifested by the condition on which it is to become void, for its whole and sole purpose is to secure the performance of that condition. Other parts should be considered in connection with it, to assist, if necessary, in the ascertainment of its meaning. But nowhere in the one before us is there a word expressive of a purpose to indemnify the sureties, as distinct from that of securing the debt or in addition to it. Though drawn by a learned and able lawyer, it contains no language technically or commonly employed to express a contract for indemnity. Certainly, the performance of the condition would have indemnified them, and, because that effect was certain and palpable, a distinct purpose of the mortgagor to produce it must be admitted as a necessary implication from the statement of their contingent liability for the debts. That implication, however, is just as true of the claims of the bank as of the appellees, and therefore gives no precedence to either. Allowing it all the force of an expressed purpose to indemnify the sureties, it would not bar the claim of either of those creditors to share in the proceeds of the security as a *cestui que trust,* if the mortgage was given to secure the debt also. That it was so given is conclusively shown by the condition, which provided that the mortgaged premises should be reconveyed to the mortgagor, his heirs or assigns, 'when each and all of which' (being the four notes held by the bank) 'shall have been duly paid by said John P. Smith,' (the mortgagor and principal debtor,) 'together with any other sums for which said James D. Smith and Lloyd B. Smith,' (the mortgagees and sureties,) 'or either of them, may be liable on, either as surety or guarantor of and for the said John P. Smith.' Under the class description naming the principal debtor and sureties, the notes held by appellees could be as easily and certainly identified as if the

date, payee, amount, when due, and rate of interest of each had been added, for it includes, without exception, all debts of the class so described. This condition would be broken by default of the mortgagor in the due payment of any such debt, and the mortgage subject to foreclosure, though the surety had not been damnified, or had been discharged from liability by some statute of limitation or by an extension of the time of payment by the creditor without the consent of the surety, or otherwise, and whether the mortgage was executed when or after the debt was contracted, or the creditor had or had not any knowledge of its existence. The proceeds of the foreclosure sale would be applied, in due proportion, on the unpaid debt, and such application would be made by the mortgagees, not of their own will, but by force of the mortgage. Thus, it is shown by its terms and operation that the mortgage, whatever else may have been an ultimate object, was a provision for the payment alike of all the debts referred to, by the mortgagor, or out of his means as far as they would go, and that the mortgagees were trustees for the creditors. The notes held by the appellees, respectively, were all given before the mortgage was executed, and matured later than any or some of those held by the bank. Both the attorney and the cashier knew of the existence of some such indebtedness as, for all purposes of security, was linked to the notes it held, by terms as plain as could be used,—'together with,'—and so were put upon inquiry as to its amount, and other particulars which would have led to certain and definite information. The bank, therefore, cannot justly complain of any wrong done by giving due effect, in the interest of appellees, to the instrument prepared by its own representatives, and which was, in our opinion, to protect and secure on equal terms, *pro rata,* all the notes involved in this suit.

"It is further contended that the decree on the cross-bill in the Wilson case is *res judicata* against appellees

Prewitt, Johnson and Warren, though they were not par-
ties to the suit, because they claim under and through
James D. and Lloyd B. Smith, who were.   But they do
not so claim.   The relation they sustain to them is not
that of privies in estate, but of *cestuis que trust*.   Their
right is derived directly from the mortgage, and the trus-
tees were powerless, by any act or default of their own,
to release or prejudice it.

"For the reasons stated the decree will be affirmed."
The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*