MILLARD COUNTY et al. v. MILLARD COUNTY DRAINAGE DIST. NO. 1 et al.

No. 5489. Decided May 23, 1935. (46 P. [2d] 423.)

*Soule & Spalding* and *S. R. Thurman,* all of Salt Lake City, for appellants.

*Grover A. Giles, A. C. Melville,* and *J. A. Melville,* all of Salt Lake City, and *O. A. Tangren,* of Delta, for respondents.

WOLFE, Justice.

The plaintiff Parker Robison, one of the respondents here, brought this action to quiet title to 80 acres within

the boundaries of Millard county drainage district No. 4, which district is a part of Millard county, Utah. He alleged that the general taxes for the year 1926 were not paid, and as a result an auditor's tax deed to the property was taken by Millard county and by the county conveyed to him. It appears that the land in question was sold to the county on the 10th day of January, 1927, and a certificate dated May 28, 1927, issued to the county followed on March 25, 1931, by auditor's deed to the county; that the property was offered by the county for sale in May, 1931, and not being sold at public auction, was thereafter, on September 1, 1931, sold to Parker Robinson and by quitclaim deed conveyed from the county. On October 1, 1931, this suit was filed by Parker Robison in the lower court to quiet title as aforesaid. Milard county was joined as a plaintiff in said suit. There were also joined as defendants H. W. Stucki and I. E. Jeffery, the then acting board of supervisors of said district No. 4. There was in addition joined as a defendant the Utah Realty Corporation, which owned $39,500 of par value of bonds of the Millard county drainage district No. 4, due and unpaid. The owner of the land before auditor's deed, his wife, the Deseret Savings Bank, and a group of parties by the name of Church, were also joined as defendants under an allegation that they claimed some right, title, and interest in the property.

For reasons which will be apparent hereafter, we expressly separate and name in this second paragraph the following additional defendants who were joined, to wit: Millard county drainage district No. 1, Millard county drainage district No. 2, and Millard county drainage district No. 3, together with each set of three individuals respectively constituting the board of supervisors of said drainage districts, and the Millard Realty Corporation and the Delta Realty Corporation. Both of these latter corporations were owners of a large number of bonds of the Millard county drainage district No. 2 and Millard county drainage district No. 3, but held no bonds of Millard county drainage district

No. 4. It will be noted, therefore, that on the one side Millard county is joined as a plaintiff and on the other side the parties named in this present paragraph as additional defendants, all of whom, as it will appear hereafter, had no direct interest in the land. The land to which it is sought to quiet title is in drainage district No. 4. Millard county parted with its interest by quitclaim deed as above stated. The theory upon which Millard county and the defendants named in the present paragraph of this opinion are joined is that they are proper parties against whom a declaratory judgment may be had under the provisions of chapter 24, Laws Utah 1925 (now with modifications, chapter 64, title 104, R. S. Utah 1933) dealing with declaratory judgments. More will be said about this later.

Parker Robison was in no way connected with the title to the land in controversy until he made the purchase and received the quitclaim deed from Millard county on September 1, 1931. He claims ownership by virtue of this quitclaim deed, and sets up in his complaint a recital of all of the proceedings taken under the statutory provisions for the assessment, levy, collection, and sale of real estate, asserting that they were regularly and properly performed. The defendants who answered were drainage districts Nos. 1 and 4 and the supervisors of each, and the three realty corporations, the other defendants having defaulted.

The Millard county drainage district No. 4 on June 1, 1919, issued and sold bonds in the sum of $310,000 to raise funds with which to construct a drainage system. These bonds were issued under authority of title 26, Comp. Laws Utah 1917, (section 2040 et seq.), as amended by chapter 41, Laws Utah 1919, which amendatory chapter became effective March 19, 1919. Section 2058, Comp. Laws 1917, being part of title 26 of that compilation relating to drainage districts, was by chapter 47, Laws of Utah 1921, amended. The original section and amendment will be found set out in the writer's opinion in the case of *Henry Hanson*

v. *Oak Burris, et al.*, 86 Utah 424, 46 P. (2d) 400. Judgment was rendered in favor of the plaintiff Parker Robison quieting title against all of the defendants, and a general declaratory judgment purporting to adjudicate certain rights between Millard county, plaintiff, on the one hand and all the drainage districts and the supervisors thereof and the Millard and Delta Realty Corporations on the other hand.

The appealing defendants—the three realty corporations —contended in this court, as they had in the lower court, that the amendment of 1921 impaired the obligation of the bondholders' contract with the district, and therefore that the tax proceedings after 1921 founded on that amendment as to the bondholders were invalid; that as a consequence the quitclaim deed from the county to Parker Robison, founded on such alleged invalid tax proceedings, was also invalid. It was further contended by the appealing defendants that, even though the title of Parker Robison based on the quitclaim deed from the county was good, still the land covered by the quitclaim deed, of necessity physically remaining in the drainage district, was liable for its share of the annual assessment of principal and interest of the bonds still to be collected during the remaining life of the bonds up to the limit of the assessed benefits. These two question, that is, the question of impairment of the obligation of the contract and as to whether an auditor's deed extinguishes the right subsequently to levy for bond principal and interest have been decided in the case of *Henry Hanson* v. *Oak Burris et al.*, 86 Utah 424, 46 P. (2d) 400. What is said there is controlling upon these two points raised in this case.

Other questions are raised in this appeal by the first five assignments of error. The appealing defendants demurred to the complaint on the ground that there was a misjoinder of both parties plaintiff and parties defendant. Such demurrers on the part of the realty corporations were overruled, and such rulings are assigned as error in assignments

Nos. 1, 2, and 3. The trial court also found in finding of fact No. 11 to the effect that each of the parties to said action was a proper party to be joined therein and in finding No. 12 that Millard county was properly joined as a plaintiff in the action.

The situation is anomalous. We have a suit to quiet title between Robison, as plaintiff, and certain defendants who were properly named because they were set out as claiming some interest in the land in regard to which Robison wanted his title quieted. We have, in addition, a parallel suit entirely independent of that suit. This independent and parallel suit is between Millard county as plaintiff and all of the defendants named in paragraph two above, together with district No. 4, which is required to be, under plaintiff's theory, a party to both actions. Moreover, in the second or parallel suit we have no subject, definite or particular, in respect to which litigation can pertain nor upon which a judgment can operate. In the suit between Robison and the defendants alleged to claim an interest in the land described in the complaint, there is a tract of land which was the subject of the litigation and upon which a judgment may operate. In the other and parallel suit it is sought to make the solution of the law questions involved in the Robison suit binding as to all lands in the four drainage districts similarly situated; that is, all lands which have been sold to the county by auditor's deed. It is sought to have the judgment in favor of Robison, which relates to a specific and definitely described piece of land, carry over and be binding as between the county and all the four drainage districts. So that not only have we two parallel and independent suits in the same action in which the only cohesive is the fact that there are law points in common which will be controlling in both cases, but we have one of the lawsuits without any definite subject-matter upon which a judgment can operate. It is a unique attempt to give the district court's determination of certain law questions in the Robison suit the force of stare decisis—nay, more than

that, because the parties defendant named in paragraph two of this opinion would not only be bound by a rule as in the case of stare decisis, but would have the rule sought to be laid down by the court frozen into the form of a judgment against them. The opinion of a trial court is not stare decisis except, perhaps, in that court. This is an attempt not only to make it stare decisis as regards all of the defendants named in paragraph two, but to give it the binding force of a judgment. The justification for joining Millard county and the defendants named in paragraph two was that chapter 24, Laws of Utah 1925, known as the Declaratory Judgments Act, permitted it.

The contention must fail on two grounds: First, that controversies cannot be joined in parallel. Graphically speaking, controversies radially connected may be joined. As an example, all the lien claimants whose claims converge on a piece of property may be joined in a foreclosure action. In some cases controversies may also be hooked up in series. This is when they are so connected as to make it imperative to determine one as a condition for determining the other. As an example, where A claims a paramount title against all lienholders, he may be joined, because it is necessary first to determine his rights before the court can proceed further to determine whether the lienholders of B, against whom A claims paramountly, have any rights. But two or more independent unconnected controversies cannot be joined in a suit even though there may be a common denominator of law questions which would be controlling in all suits. When A has a suit against B, for instance, on a promissory note which presents certain legal questions for adjudication, it does not mean that there can be joined as plaintiffs all persons desiring to sue on notes, the outcome of which would depend upon a determination of the same legal questions. The Declaratory Judgments Act permitted no such thing. The second reason the contention must fail is that the Declaratory Judgments Act did not dispense with the necessity of a subject in respect to which the judgment

could operate. Section 1, chapter 24, Session Laws 1925, reads in part as follows:

"Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed."

Succeeding sections either set out provisions for the application of the power enunciated in section 1 to particular subjects or express refinements of that power. A court may determine rights, statuses, legal relations, or obligations which arise through, under, or by virtue of written instruments such as deeds, wills, or written contracts, or because of a statute, municipal ordinance, contract, or franchise. Also, persons interested as a trustee or through a trustee or other fiduciary in an estate or trust may bring an action for the declaration of rights or legal relations in respect thereto, and may obtain directions for the guidance of such trustees. Naturally such determination of rights, statuses, relations, or obligations would involve the construction of the instruments out of which such rights, etc., arise.

The fact that opportunity was given to determine the right or status or relation in the court without having to await the time when there was an alleged technical or substantial violation of such right or disturbance of such relation or status did not mean that moot questions could be litigated or that questions of law could be determined which would be controlling in controversies over subject-matters which were not before the court. The statute did not intend to dispense with the necessity of having a particular and specific subject-matter such as a particular piece of real estate, chattel, person, written instrument, chose in action, debt, estate, fund, or other definite subject in respect to which the litigation applied or upon or in regard to which a judgment could operate. Before the Declaratory Judgments Act, action in the courts, except in certain limited cases, of which an action to quiet title was one, involved an alleged right and an invasion of such alleged right. Juridically speaking, there was a primary right, an invasion of

that right and then the secondary right to have recourse to the courts for redress of the alleged wrong. The Declaratory Judgments Act did away with the necessity of waiting for the invasion of the right or disturbance of the status or relation before it was possible to exercise the secondary right of having recourse to the courts, but permitted the secondary right to be exercised for the purpose of determining whether there was a primary right before such alleged primary right was invaded. The Declaratory Judgments Act did not enlarge the field of justiciable actions, but permitted an issue as to the existence of a right, status, or relation to be joined without alleging or joining issue on an allegation of invasion. It was still necessary to come to the courts with an actual concrete subject of an action. The judgment then operated to declare or deny the right, status, or relation rather than to give or deny relief because of an alleged invasion, which relief would have had to be predicated upon the finding that the right or status did or did not exist.

If Robison had joined all the defendants necessary or proper to obtain a complete adjudication in his action to quiet title and then another plaintiff would have joined an independent set of defendants in the same suit to quiet title to a different piece of property, that is, controversies in parallel, it would be quite apparent that there would have been in such case a misjoinder of parties plaintiff and defendant. Certainly, by bringing in a parallel controversy without even a subject-matter in that controversy in respect to which to litigate does not make the joinder any more valid. And the fact that it is done under the guise of getting a declaratory judgment as to the abstract questions of law which, when determined, would inform the parties to the action of what their rights would be in various pieces of property not before the court, does not give the joinder more validity. It mattered not to the plaintiffs who were misjoined that each tract of land bought in by the county to which it was sought to make the rules of law found in

the Robison controversy applicable might be subject to infirmities in the tax proceedings leading up to the sale which in themselves would serve to defeat the title of the county or its grantee in any action to quiet title to such particular piece of land; it mattered not how many other persons or erstwhile owners of those tracts may have claimed interest in the tracts which could not possibly have been precluded by this sort of an attempt to quiet titles by the wholesale through a blanket proceeding. As between the county and the drainage district, argued the plaintiff county, it would be a binding judgment. The Declaratory Judgments Act contemplated no such result. In this case the iniquity of the proceeding is shown by the fact that the court issued an injunction preventing the four drainage districts from levying "future drainage taxes or assessments of any name or nature whatsoever for the purpose of paying drainage bonds or *any other indebtedness* of said drainage districts against any of the lands heretofore sold to Millard County for the nonpayment of general taxes and for which the period of redemption from such taxes has expired." (Italics ours.) By joining Millard county and all of the defendant drainage districts, the blanket injunction was obtained preventing the collection of all such taxes. While the case of *Hanson* v. *Burris,* supra, held that such drainage districts may not collect such taxes as they were in this action enjoined from collecting, yet, had the opinion in the Hanson Case gone the other way, much damage could have been done by such injunction operating against parties who should never have been compelled to join or defend, and certainly not brought under a blanket injunction order.

The judgment between the county and the defendants named in paragraph two of this opinion is reversed, and the court ordered to dismiss as to all defendants named in paragraph two of this opinion in regard to which the complaint alleged no interest in the land described in said complaint, and the court is ordered to modify its findings of fact, conclusions, and decree as it affects the controversy

between Robison and the defendants properly joined in accordance with this decision. Findings of fact Nos. 3, 4, 5, 7, 8, 9, 11, 12, 13, 14, 24, 26, 27, 28, 31, 32, 33, 34, 35, and 38 are affected, and must either be changed or deleted in whole or in part.

Although the Millard county drainage districts Nos. 1 and 4 did not appeal, they filed a brief in this cause. As to what status they occupied before this court was not set out, but the matters argued in that brief will be found to have been decided in the case of *Hanson* v. *Burris,* supra.

Costs on this appeal are given to Parker Robison, but not to the county except that as an offset to such costs the appealing defendants shall have the costs of printing all those pages in their first brief and reply brief as are devoted to the discussion of the Declaratory Judgments Act, and the cost of printing all pages in the abstract made necessary by reason of the joining of extra plaintiffs by defendants. Such costs, when determined, shall also be chargeable against the plaintiff county, to be collected only once, however. Whichever of the two plaintiffs shall pay such costs hereby allowed to the appellants shall have the right of contribution over from the other plaintiff.

ELIAS HANSEN, C. J., and FOLLAND, EPHRAIM HANSON, and MOFFAT, JJ., concur.