## UTAH OIL REFINING CO. et al. v. MILLARD COUNTY DRAINAGE DIST. No. 4 et al. (UTAH REALTY CORPORATION, Intervener).

No. 5491. Decided October 31, 1935. (50 P [2d] 774.)

Rehearing Denied January 4, 1937.

*Soule & Spalding* and *S. R. Thurman,* all of Salt Lake City, for appellant.

*O. A. Tangren,* of Delta, and *Melville & Melville,* of Salt Lake City, for respondents.

WOLFE, Justice.

The three plaintiffs, Utah Oil Refining Company, Intermountain Building & Loan Association, and Hadlock, as receiver for the Delta State Bank, brought this action, not to quiet title to the lands set out in the complaint, but to have canceled, annulled, and purged from the records certain purported drainage taxes levied against the lands after the title had passed to the county by auditor's deed for the unpaid general taxes for the year 1920. The complaint further prayed that drainage district No. 4 and its supervisors, the county commissioners, the county auditor, the county treasurer, and the county recorder, who were all joined as defendants, be enjoined and restrained from in any manner encumbering the plaintiffs' lands with further drainage taxes and assessments. This immediately raises the same question which was raised in the case of *Henry Hanson* v. *Oak Burris et al.,* and reported in 86 Utah 424, 46 P. (2d) 400, as to whether the auditor's deed to the county cleanses the land from all future liens for drainage district taxes. We have held in that case that it did. The reader is referred to that case for the reasoning upon which that decision rests. In this case the Utah Realty Corporation intervened and raised the same questions which were raised in the Hanson Case.

Bonds of drainage district No. 4 in the sum of $310,000 were issued and sold June 1, 1919. The property described in the complaint is located within the boundaries of this drainage district. The Utah Realty Corporation as intervener set out that it was a large holder of these ▮ bonds. It contended, as it had been contended in the Hanson Case, supra, that title 26, Comp. Laws Utah 1917 (section 2040 et seq.), dealing with the formation of drain-

age districts and the issuance of bonds for the borrowing of money for the construction of drainage projects, and especially sections 2055 and 2058 of said title, required the drainage and the general taxes to be treated together as one lump sum for the purpose of collection of taxes and sale for delinquent taxes. In other words, the intervener contended that drainage taxes were put in the same position as general taxes for governmental purposes, i. e. state, county, city, and school district taxes.

In 1920, the first year after the bonds were issued and sold, the county treasurer, instead of placing the drainage taxes on the same tax notice with the general taxes and treating both taxes as an integral unit and including them in one total through the various steps embraced in tax collection, separated the two taxes, in that separate tax notices were sent out, one for general taxes and another for the so-called drainage district taxes. Lands delinquent in their general taxes for the year 1920, including the land described in the complaint, were sold for general taxes without including or requiring the payment of the drainage taxes. A certificate of sale was given to the purchaser for the general taxes only. An auditor's deed for the general taxes was given to the county upon the expiration of the period of redemption, and on the 5th day of May, 1925, the land was sold by the county through a quitclaim deed to the Delta State Bank. Further proceedings in the way of quieting title against the drainage district were later brought. The facts concerning this latter suit will be set out in detail later, as they bear on another question involved in this appeal. Suffice it to say now that the intervening bondholder, the Utah Realty Corporation, contends that, under the 1917 law, separate proceedings by the county treasurer could not be pursued, and that to separate them was detrimental to the rights of the bondholders. In the case of *Hanson* v. *Burris,* supra, we have already held that this was not the case. A reading of that decision will reveal the reasons. It is con-

trolling as to the contention of the intervener in that regard in this case.

The intervening bondholder contends in this case, as was contended in the Hanson Case, that while the lien for drainage taxes already assessed against the land might be cleansed by the auditor's deed, yet the latter did not extinguish the right to levy against the property for future drainage taxes necessary to pay the principal and interest installments on the bonds, and that a lien therefor attached to the land in the hands of any private purchaser from the county. It was on that supposition that the drainage district, as alleged in the complaint, continued to levy and sell the land described in the complaint for drainage taxes, and it was for the purpose of expunging such taxes from the record and of preventing their future imposition that this complaint was filed and that the county officials, who have it in their power to levy and collect taxes, were joined as defendants. The contention of the intervener in this regard is settled by the Hanson Case. We held in that case, at least when the land went to the auditor's deed for general taxes, it did cleanse the lands from all liability for future assessment of drainage taxes.

A further interesting question, however, arises in this case and will require the statement of further facts in order intelligently to understand the rationale. It appears that after the Delta State Bank obtained its quitclaim deed from the county in 1925, Seth Pixton, as receiver for said bank brought an action against Millard County Drainage District No. 4 and the town of Delta, a municipal corporation, to quiet title to the lands described in the complaint filed in this suit, and on the 14th day of October 1930, obtained a judgment against the defendants in that case quieting title to said lands. That judgment and decree was introduced in evidence over the objection of the intervener in this case. The objection of the intervener was founded on the assertion that it was not a party to the Pixton suit and therefore not

bound by it. It assigns the ruling of the court admitting the files of that case as error.

Seemingly, the contention of the intervener is that the plaintiffs have failed to prove the allegations necessary for the court to quiet title in them on the theory that the files in the Pixton Case were wrongly admitted and in no case would be binding against the intervener. It is further contended that the plaintiffs, as against this intervener, were required to prove their title to the lands described in the complaint filed in this action by showing that the proper steps were taken by the tax collecting authorities prerequisite to the issuance of a valid auditor's deed, and that the notice sent out in the year 1920 relating to the lands described in the complaint, the tax sale certificate, and the auditor's deed contained fatally defective descriptions of the property purported to be taxed and sold. The intervener contends that the plaintiffs did not offer the tax title upon which the Pixton judgment was based in evidence, but founded its complaint strictly on the Pixton judgment; that the intervener, not being a party to the Pixton Case, is not bound by it, and, therefore, the admission of the Pixton judgment could not be the foundation of a judgment against the intervener in this case.

The intervener itself introduced through the County treasurer of Millard county the description contained in the assessment notice of the general taxes for 1920 and the description contained in the tax sale notice, and the description in the tax sale certificate. The description in the auditor's tax deed was also introduced by the intervener. All of these descriptions the intervener claims were fatally defective and would defeat title in the plaintiffs. Can the intervener use these alleged defective descriptions in the notices to defeat this action by the plaintiff *in view of the judgment quieting title in favor of Pixton, plaintiffs' assignor,* against the drainage district? In the first place, this action is not one for the quieting of title. It is an action directed towards removing certain purported assessments from the record

which would be a cloud on the title and enjoining any further assessments for drainage taxes. The intervener is a bondholder. It does not claim any adverse title to plaintiffs. It does not care who has the title as long as the land is liable for the drainage taxes. The real reason it attacked the plaintiffs' title was because it was contending that the auditor's deed was not a valid one, and hence that regardless of *Hanson* v. *Burris*, the land should still be considered as not having passed through the cleansing process and is still taxable for drainage purposes. If we had held in *Hanson* v. *Burris* that the auditor's deed did not cut off the right thereafter to hold the land liable for drainage taxes necessary to pay future installments of the principal and interest of the bonds, the intervener would have no interest in contending that the plaintiffs in this case did not get a good title because the auditor's deed to the county upon which their title was founded was itself invalid. It is only because the intervener wants to be in a position to contend that even if, as a matter of law, a good auditor's deed does cut off the liability for future drainage taxes, yet in this case there was not a good auditor's deed which would so cut them off. Therefore what the intervener is essentially contending for is that the auditor's deed to the county purporting to cover the land described in the plaintiffs' complaint was itself invalid and therefore, even in view of the decision in *Hanson* v. *Burris*, supra, this land was still liable for the drainage taxes. True, if the auditor's deed was not valid as a consequence these plaintiffs would not have obtained a good title from the county, but the ultimate object of the intervener was to defeat the plaintiffs' title only for the purpose of keeping the land amenable to drainage assessments. As stated before, the consequence of this, of course, would be to undermine the plaintiffs' title. But that would be a by-product of the object sought by the intervener.

As to drainage district No. 4, it was precluded by the Pixton judgment because it was a party to that suit and judgment was rendered quieting title as against it and in favor

of the plaintiff Pixton. That judgment and decree necessarily adjudicated the fact that the auditor's deed as far as the drainage district was concerned was valid, otherwise the plaintiff Pixton, as receiver of the Delta State Bank, could not have obtained judgment.

The next question is: Does the adjudication obtained in that case, involving the finding that the auditor's deed was valid, bind this intervener? That is the only question which need be determined in this division of the case. After considerable study, not unattended with difficulty, we have concluded that the judgment in the Pixton Case was binding upon the intervener as to the fact of the validity of the auditor's deed given to the county covering the land described in this action, even though the intervener and none of the bondholders were parties to the Pixton suit. We have arrived at this conclusion on the ground that the drainage district was the representative of the bondholders in meeting the particular issues raised by the Pixton suit. As will be disclosed by what follows, considerable care must be exercised in determining just what question was at issue in determining whether the district was the representative of the bondholders in respect to the litigation of those issues. Counsel on both sides of this case, upon special call of the court, and this court in its independent researches, have not been able to find a case wherein the precise question as to whether a district, constituted as is this drainage district and with like legal relationship to the bondholders or constituent landowners, represents the bondholders in a suit by the purchaser of a tax title from the county to quiet title in himself where the only issue raised is as to the legal effect of the county auditor's deed given for unpaid general taxes, or irregularity in the tax proceedings themselves, and where the validity of the bond issue or the law authorizing it or any matters affecting the contract between the district and the bondholders was not involved.

It hardly needs restatement that in order to conclude any right, title, or interest of a person by an adjudication, it is

essential that such person be a party to the proceeding or be represented by one. In the latter case he is said to be a privy. It is sometimes quite difficult to say under what circumstances one is bound and to what extent, if at all, by judgment if his name does not appear on the judgment roll or complete record. Says Judge Van Fleet in his work on Former Adjudication, vol. 2, p. 910:

"A few cases define these matters, but like the majority of the definitions laid down in deciding special cases in which the view of the writer is limited, they are all partial and faulty."

Our studies reveal that, in determining whether one party to a suit represents another party who was not a party to the suit, not only is the relationship between them to be taken into consideration, but the matter litigated and the issues involved may in some cases be determinative. It is quite apparent that a party to a suit may represent another in one matter, while in another such party may actually be adverse. This is illustrated somewhat by the case of an administrator of an estate. In a suit to conserve the assets of the estate or in his resistance to a suit on the part of another who claims such purported assets, the general creditors of the decedent or of the estate would be bound by the outcome of that suit; but when the creditor prosecutes a claim against the estate, the administrator is adverse.

What is the nature of the legal relationship between the drainage district and the bondholders? In a review of the law constituting the district and giving it power to contract to raise money for the construction of drainage projects and to issue bonds therefor and to provide for the raising of the principal and interest of such bonds, we find as follows: That the drainage district, by section 2044, Comp. Laws Utah 1917, is a body corporate with the right to sue and be sued, with the supervisors and their successors in office constituting the corporate authorities of such drainage district, with power to administer its affairs and to raise money by taxation for such administration. We further find from the

law that the only manner in which the bondholders can obtain the principal and interest on their indebtedness is through the levy against the constituent property of the district. The district has no property of its own except such as is necessary to administer and operate the district from year to year, unless, of course, it obtains through tax sales for delinquent drainage taxes or by buying in lands sold by the county for general taxes title to certain lands in the district. It holds such lands as trustee for the bondholders, and as to such lands the bondholders may have the right to the supervision of a court of equity in the administration and sale of the same for their benefit. However, we are not concerned with that situation at this time. The point to be kept in mind is that the bondholders have no recourse directly to any of the lands located in the district owned by other than the district either collectively or singly, but can only require the supervisors of the district to take the necessary steps through the tax collecting machinery to raise the annual installments of principal and interest. They may mandamus the supervisors to do this and may mandamus the county officials to carry out the steps required by the statute on the part of the latter. In all these matters the drainage district acts as the representative of the bondholders. In other words, in all matters in regard to the assessment and collection of the tax, the district, under the law and under the contract contained in the bond, acts for the bondholders and not for the landowners of the district. The bondholders must act through their agents by mandamus or otherwise in order to effect the collection of taxes if their agents refuse to do their duty. The bondholders could not directly make the assessments or substitute themselves for the supervisors of the district under the law to take the steps which the law provides for the assessment and collection of drainage district taxes. It must all be done through the agents. The bond itself reads as follows:

"For the faithful performance of all covenants, recitals and stipulations herein contained, for the proper application of the proceeds

of the tax heretofore levied or which may be hereafter levied, and the faithful performance in apt time, manner and form of each official act required and necessary to provide for the prompt payment of the interest and principal of this bond as the same matures, and the full faith, credit and resources of the Drainage District are hereby irrevocably pledged."

The district contracts for the faithful performance of each official act required and necessary to provide for the prompt payment of the interest and principal of the bond. As a necessary incident to the assessment and collection of taxes, the district would have the duty to take all the steps required in order to resist any action having for its purpose the objective of removing the land from accessibility to taxes for drainage purposes. It would have the duty to protect the bondholders by seeing that all lands sold for general taxes were based upon proper antecedent proceedings. At this time it is unnecessary to state whether it would have the duty to protect the property from being sold for general taxes by paying the drainage taxes. Certainly, if it owed such a duty, the means of accomplishing such duty would have to come from the bondholders or moneys available, if any, in the hands of the district. But independently of any duty to pay the general taxes, which are a prior lien, and protect the property so that the lien for drainage taxes would not be eliminated by a sale for general taxes, as would be the case according to the decision in the case of *Hanson* v. *Burris,* supra, the district, through its officers, has been made by law the representative of the bondholders for the protection of the property against a removal from accessibility to drainage taxes. In a suit to quiet title by any purchaser at a sale for general taxes wherein the question of the regularity of any proceedings antecedent to the tax sale itself is involved, or where a legal question not involving in any way the validity of the bond issue or the relationship between the district and the bondholders is up for adjudication, it would be the duty of the district in behalf of the bondholders to meet the issues. All such matters and ques-

tions relate to the collection of the tax, or, what is saying the same thing, relate to the matter of obtaining the revenues for the payment of the bond principal and interest.

The question of whether a party to a suit is representative of another depends so much upon the relationship of the parties and the questions involved that it is rather hazordous to give illustrations. Even in the case of a trustee we find the authorities vary as to whether the trustee represents the beneficiaries of the trust as to litigation affecting the trust. Our statute requiring actions to be prosecuted in the name of the real party in interest permits the trustee to be a party plaintiff without joining the beneficiaries. Whether one could sue the trustee of a trust without joining the beneficiaries as defendants in this state, and bind the beneficiaries, would depend upon the circumstances of the case. The general rule is, according to Black on Judgments (2d Ed.) vol. II, p. 884, that:

"In all proceedings affecting the trust estate, whether brought by or against the third persons, the trustee and cestui que trust are so far independent of each other that the latter must be made a party to the suit in order to be bound by the judgment or decree rendered therein. But some of the decisions hold that a suit prosecuted or defended in good faith by a trustee for the beneficiaries, with their knowledge and consent, or more particularly, at their request, will be conclusive upon them in its result."

As stated before, this general rule, as far as a plaintiff is concerned, is modified by our statute. Black goes on to say:

"Whether, in an action to redeem or to foreclose a mortgage of the trust estate, or to enforce a debt of the trust which is specifically chargeable upon, or payable out of, particular property, it is necessary that all the cestuis que trustent should be joined as parties, is not fully settled. The English cases apply the general rule in this instance. But the majority of the American cases hold that, in such cases, the trustee may represent the beneficiaries, and the latter will be bound by the decree in the absence of fraud."

Here again it is noticeable that one must look at the object of the suit in order to determine whether the trustee

will be considered as representing the beneficiaries so as to bind them. In the case of *Henderson* v. *Williams*, 97 Ga. 709, 25 S. E. 395, under the special language of a will, it was held that the trustee, in a suit brought for the collection of a note executed by the trustee, represented both the life tenant and the remaindermen, although they were not made parties to the action. Likewise, in the case of *Wegman Piano Co.* v. *Irvine*, 107 Ga. 65, 32 S. E. 898, 73 Am. St. Rep. 109, it was held that a homestead is in the nature of a trust estate, of which the head of the family is a trustee; and a judgment in a suit brought against him as the head of the family, to subject the homestead to the payment of a debt belonging to the class for the payment of which the homestead can be rendered liable, is binding upon the homestead beneficiaries, although they are not parties to the action. *Clark* v. *Flannery & Co.*, 99 Ga. 239, 25 S. E. 312. In the case of *New Jersey Franklinite Co.* v. *Ames*, 12 N. J. Eq. 507, it was held that the cestui que trustent to a mortgage are not necessary parties to a bill of foreclosure, whether such mortgage constitutes a prior or subsequent encumbrance, or whether the mortgagee be complainant or defendant. In *Van Vechten & Sebring* v. *Terry*, 2 Johns Ch. (N. Y.) 197, is was held that:

"Where real estate had been purchased by a joint fund, raised by subscription, of above 250 shares, or subscribers, and the property was conveyed to A. B. and C. as trustee, on a bill for the sale of the premises under a mortgage, made to the plaintiffs by the trustees, it is not necessary that the subscribers or stockholders should be made parties; the trustees sufficiently representing all the interests concerned, for that purpose."

In the case of *Willink* v. *Morris Canal & Banking Co.*, 4 N. J. Eq. 377, it was held that, while

"the undeniable general rule in equity is that a nominal trustee cannot bring a suit in his own name, but must join with him the names of the persons having the beneficial interest," yet, "where a banker negotiated in the city of Amsterdam a loan of seven hundred and fifty thousand dollars, for the Morris Canal and Banking Company, and

the company, to secure the repayment of the loan, executed a mortgage to the said banker, 'being the agent and trustee of the several subscribers to the loan,' * * * that the mortgagee might file a bill to foreclose the mortgage in his own name, without making his cestui que trusts parties," and, further, "that it was a part of the original contract between the mortgagors and mortgagee, that the lenders should in this transaction be represented by the mortgagee and by him alone."

In *Chambers* v. *Prewitt*, 172 Ill. 615, 50 N. E. 145, it was held that creditors occupying the relation of cestui que trustent as to a mortgage given by their debtor to his sureties are not bound by a decree in the suit to which they are not made parties, by the fact that the mortgagees who stand in the position of trustees for such creditors were parties thereto. In most of the cases where the trustee for the bondholders in a corporate bond issue sues or is sued, he represents the bondholders because of the language contained in the trust deed. We cite these cases involving trustees, not because we believe that the drainage district in this case is a trustee for the bondholders, but because it has some of the aspects of a trustee and because by the implications of the statute and of the bond itself it appears to us that the district, having the duty to take all the steps necessary for the collection of the taxes raised for the purpose of paying off the principal and interest of the bonds, is charged with the duty of keeping the land within the district in status quo so that drainage taxes may be collectible therefrom in so far as the duty to prosecute or resist litigation designed to take such property out of the taxable category for drainage purposes is concerned. Whether funds raised for administration could be used to defend or prosecute such litigation or would have to come from the bondholders is a question which we need not now decide.

Looked at another way, we can demonstrate the principle herein enunciated by taking two illustrations. Where a claimant or creditor is interested in a piece of property which secures his debt or upon which there is a charge for

the payment of his debt, a person bringing suit to have the property declared free of such encumbrances must join such creditor, and that whether the action is in the nature of one to quiet title or in equity to foreclose. On the other hand, where a creditor is a general creditor of a party, a third person, suing such party in a suit to declare certain property the assets of such third person or to free property from a charge claimed by the debtor, need not join all the general creditors of the debtor. In other words, if a person sues to abstract a purported asset from the general estate of a person, such a judgment, so declaring the asset not to belong to said debtor, need not join the creditors to bind them on said judgment. This is true when a party claims property purporting to belong to a decedent's estate. A judgment against the estate or the administrator thereof declaring the property to be the property of the plaintiff or declaring it to be free from any encumbrance or charge in favor of the estate is binding upon the general creditors of the estate. In fact, under this view such general creditors would not be proper parties to intervene in any later action upon the part of the plaintiff to quiet title to the property.

In the case at bar, we have a situation which is somewhat in between the two classes of cases above mentioned. In this case the bondholders are really not true lienholders of the land in the district. They only have a right to compel assessment and collection of the tax against such landowners. On the other hand, they are not general creditors of the district. See *State ex rel. Malott* v. *Board of County Com'rs of Cascade County*, 89 Mont. 37, 296 P. 1. They are really creditors who have no right to come against any land directly to satisfy their debts nor can they by a general judgment against the district execute against any of the lands in the district, except perhaps such lands which the district may perchance hold which are not derived from tax sales or not held in lieu of the fund for the benefit of bondholders. They have a debt which is payable only out of taxes to be assessed against the lands in the district. It is quite doubt-

ful whether, if they obtained a judgment against the district, they can execute against property which the district holds for the benefit of all the bondholders. Their remedy may be only to come into equity to have such property administered for the benefit of all the bondholders if the district fails to so administer them. A group of bondholders under a corporate bond issue would have the right to require the trustee who holds property for them to administer or apply it to the total bond indebtedness. A small group of such bondholders could not for themselves, if they obtained a judgment against such trustee, execute against property in his hands for the benefit of all bondholders to the satisfaction of their judgment alone. However that may be, the hybrid situation which we have in the case of a drainage district is one in which the drainage district really represents the bondholders in the matter of the collection of taxes. The bondholders may be entirely unknown and widely scattered. While the fact that it is difficult to join parties to a suit does not exempt a plaintiff from so doing in order to bind them, yet in a case where the law contemplates many separate bondholders related to a single issue, we may expect that the law has provided by express provision or implication for their representations in cases where the fundamental relationship to the district is not involved. They could not possibly be joined in every action by every claimant of land within the district. The bank at which the bonds are payable or the representative of the bond house that purchased the bonds would not, unless especially authorized, be empowered to represent the bondholders in a suit. We do not believe that the law contemplates that a plaintiff who brings an action to quiet title to a piece of land which he has purchased at a tax sale would be required to hunt out the bondholders, determine who are and who are not residents of the state, and serve those who are not by constructive service and those who are by personal service, where such action to quiet title was not founded on any claim of any invalidity of the contract between the bondholders

and the district or upon any invalidity of the law upon which such contract was based or any denial of the existence of bonds or the rights of the bondholders to proceed under their contract.

We have examined every case cited by the interveners in their briefs. Every such case is a case in which the question at issue affected the validity of the claim of the creditor or the bondholders or was an attack upon the authority of the entity issuing the bonds legally to float such bonds, or in some way involved the right of the creditor or the bondholders to come against the municipality or the entity which issued the bonds. Of course, in such case the bondholders or creditor could not be foreclosed until they had their day in court. To permit the debtor on such suit by a third party to represent the creditor or bondholders would be to permit the debtor to absolve itself by a simple failure to defend. He would be representing his adversaries in such a suit. A suit to quiet title against the district based on a tax deed where no question affecting the contract between the district and the bondholders is involved does not raise an adversarial question between the district and the bondholders.

In the case at bar the drainage district is only nominally the debtor. The taxpayer is really the debtor. Any judgment in favor of a purchaser of land at a tax sale does not absolve the district from its obligation to collect the taxes, but simply takes that piece of land outside of the category of those lands which are amenable to taxes for drainage district purposes. In the case of *Coler* v. *Board of Com'rs of Stanley County* (C. C. N. C.) 89 F. 257, it was held that a judgment rendered in a suit brought by the commissioners against the county treasurer to restrain him from paying interest on certain bonds is not an adjudication binding upon the bondholders, who were not parties nor represented in the suit. Of course, in such suit the bondholders never had their day in court in an action which directly attacked the very existence of their claims. In the case of *Mail* v. *Maxwell*, 107 Ill. 554, it was held:

"Where a decree is rendered enjoining the collection of taxes to pay interest accruing on municipal bonds, the bondholders not being made parties, such decree is not conclusive against a bondholder, or res judicata as to him."

In that case a decree of the circuit court enjoined the collection of taxes levied on plaintiff's property for interest on corporate bonds issued by a town to a railroad company, on the ground that such bonds were void. Here again the question which was tried in the suit, which it was claimed was res judicata and binding on the county as against the complainant property owner, but not as against the bondholders who were not made parties, involved an attack on the very existence of the bonds. See, likewise, *Atchison, T. & S. F. R. Co.* v. *Com'rs of Jefferson County*, 12 Kan. 127; *Morrill* v. *Smith County* (Tex. Civ. App.) 33 S. W. 899; *State* v. *Board of Com'rs of Wichita County*, 59 Kan. 512, 53 P. 526; *Lee* v. *Independent School Dist. of Iowa City*, 149 Iowa, 345, 128 N. W. 533, 37 L. R. A. (N. S.) 383, and note thereto; *State of Ohio* v. *Cincinnati Gas Light & Coke Co.*, 18 Ohio St. 262, being an information in the nature of quo warranto. Likewise, in the case of *Laird* v. *City of De Soto* (C. C. Mo.) 22 F. 421, it was held that bondholders are not bound by quo warranto proceedings unless parties thereto. It was held in *People* v. *Chicago, B. & Q. R. Co.*, 247 Ill. 340, 93 N. E. 422, the county clerk against whom mandamus issued in favor of the county commissioners requiring him to extend the taxes at the rate certified to him for county, park, and library purposes, was not conclusive as to the validity of the levy at the rate imposed as against taxpayers, although it is most generally held that where one taxpayer brings a suit against a political subdivision to test the validity of a tax, it binds all other citizens; the properly constituted authorities of said political subdivision representing all the citizens in said suit. Naturally the county clerk was in no way a representative of the taxpayers in resisting a suit seeking to test the validity of a bond. There was noth-

ing in the law from which such relationship would be implied.

The upshot of this investigation results in the conclusion that in the cases where the issue is as to whether the tax sale was based on regular antecedent proceedings or whether it divested the property of the so-called lien in favor of the drainage district and, therefore, in favor of the bondholders, that the drainage district is the only necessary party to bind the bondholders. That such district represents the bondholders in such suit, but not in any suit where the validity of the bonds is drawn into question either by an attack upon the constitutionality of the law authorizing such bonds or an attack upon the manner in which the law was executed in issuing the bonds, or where the question of whether there were outstanding bonds in existence or whether the contract between the district and the bondholders is itself valid, or anything which pertains to the interpretation of that contract or affects the rights of the bondholders arising out of that contract, is brought up for determination.

In the instant case, the adjudication in the Pixton Case did not in any way affect the status of the bondholders in relation to the district nor in any way question the effect or validity of the bonds or of the contract or of the law on which the contract was founded. It affected only the question of whether the district could continue to come against a certain piece of land for taxes for drainage purposes. It is true that the supervisors of the district may be antagonistic to the bondholders. It is true that the supervisors may favor the landowners in the district who are their neighbors to the detriment of the bondholders, in that the supervisors may be interested in relieving themselves and their neighbors of the burden of drainage taxes for bond principal and interest and thus not resist suits to the same extent which they otherwise might. But we cannot presume that the supervisors would not carry out their trust or that they would not honestly administer the affairs of the district and do their duty to the bondholders as well as the land-

owners whose lands are located within the boundary of the district  Moreover, the bondholders may join in the suit; they are proper but not necessary parties.  The administrator or executor of a decedent's estate, the trustee in bankruptcy, or the assignee for the benefit of creditors, and fiduciaries similarly situated, all have the twofold duty to administer fairly for adversarial parties when their interest may lie more in one direction than in another.

If it could be shown that the supervisors had not defended in the Pixton Case in good faith, the situation then might be different.  Otherwise, the bondholders were not proper interveners; but no error was assigned because of permitting them to intervene, but the same question upon which their right to intervene depended was brought up by the assignment of error attacking the court's admission of the judgment in the Pixton Case and treating it as res judicata.

From what has been said, it follows that the intervener must fail in its contentions made in this case.  It does not lie in the province of the bondholders now to attack the auditor's deed covering the lands described in the complaint herein, that matter already having been settled against them.

The first three assignments of error attack the findings in which the lower court held that the three plaintiffs were owners of the respective tracts of land set out in their complaint as belonging to each.  As stated in this opinion, there was no issue between the plaintiffs and the intervener as to which of them was entitled to the land. The question of title was collateral.  Findings, therefore, that the paintiffs were the owners of the lands is a finding only on matters of inducement and not of the controlling issues in the case.  There was no error, therefore, in findings Nos. 6, 7, and 8.

Assignment No. 4, which attacks finding No. 9 to the effect that the decree in the Pixton Case is binding upon the intervener, is not well taken.  In this case, as in the cases of

*Hanson* v. *Burris et al.,* supra, *Millard County* v. *Millard County Drainage District,* 86 Utah 475, 46 P. (2d) 423, and *Gardner* v. *Dobson,* 86 Utah 473, 46 P. (2d) 422, the respondents raised the issue of an estoppel on the theory that the bondholders who had benefited by the collection of taxes according to the method laid down by the amendments of 1921 and 1925, the effects of which were considered in the Hanson Case, could not, after accepting such benefits over a period of years, raise the question of the constitutionality of such amendments. Since in all these cases we have held that there is no impairment of the obligation of the contract because there really was no change made by the amendment in the method or procedure of collecting the drainage taxes, the issue of estoppel is eliminated from this as well as the other cases. Consequently, finding No. 19 attacked by assignment No. 8 is superfluous.

This disposes of all the assignments of error.

The judgment of the lower court is affirmed, with costs to the respondents.

ELIAS HANSEN, C. J., and FOLLAND, J., concur.

MOFFAT, Justice (dissenting).

I dissent. I am unable to concur in the position taken in the prevailing opinion as to the binding effect of the Pixton judgment upon the intervener. The fact that the drainage district was a party defendant in the Pixton Case does not constitute the drainage district a representative of the bondholders. In certain relations the drainage district may not only not be a representative, but may be adverse to the bondholders.

Such questions as touch the validity of the auditor's deed given to the county covering the land described in this action may or may not have been raised in the Pixton suit; but whatever interests the bondholders have as to the determination of any question affecting such interests they are

entitled to be made parties, and have such issues litigated, and may not be bound by pleadings, findings, or judgments to which they are not parties. The validity of the drainage tax lien of which the bondholders are the beneficiaries is a question the bondholders are entitled to litigate, and whether or not such lien has been destroyed by a procedure whereby the title passes to another under the assessment and collection of general taxes, the bondholders are entitled to litigate such question in such way as to them may seem proper. The bondholders were not parties to that suit. As well say that a holder of a first mortgage lien against a tract of land is precluded from asserting his lien because certain other parties have a suit between themselves as to a question of title without making the mortgagee a party or showing he was represented and his rights under such representation were adjudicated. In the case of *Hanson* v. *Burris*, 86 Utah 424, 46 P. (2d) 400, the question of the tax procedure and the validity of the auditor's tax deed to the county was not raised. It was expressly conceded in that case that the procedure was regular and the deed valid as a tax deed. The question was that the claimed departure from the procedure as to the levying and collection of special taxes was a violation of the terms of the contract with the bondholders.

I am unable to concur in that part of the opinion admitting in evidence the record or judgment of a cause to which the bondholders were not parties and in which they were not represented.

EPHRAIM HANSON, Justice (dissenting).

I concur in the views expressed by Mr. Justice MOFFAT in his dissenting opinion.