## M. C. KRESS, Appellant, *v.* GUS D. COREY, Et Al., Respondents.

No. 3423

January 12, 1948.                    189 P.2d 352

2

*Morse & Graves,* of Las Vegas, for Appellant.

*Thruston & McNamee,* of Las Vegas, for Gus D. and John D. Corey, Respondents.

*Lewis & Hawkins,* of Las Vegas, for Arthur C. and Harry C. Pauff, Respondents.

## OPINION

By the Court, BADT, J.:

Plaintiff in the court below, M. C. Kress, has appealed to this court from the order and judgment of the lower court dismissing his complaint for a declaratory judgment, assigning error, among other things, in the sustaining of the general and special demurrers of the defendants Gus D. Corey and John D. Corey and of the defendants Arthur C. Pauff and Harry C. Pauff. Other errors are assigned and will be discussed later. The case is the first one to reach this court in which there has been brought into question the right of a plaintiff to seek relief under the uniform declaratory judgment

act by reason of the various relationships existing between the parties as alleged by the plaintiff.[1]

Plaintiff's original complaint, denominated "complaint for a declaratory judgment," sought a declaration of plaintiff's rights and liabilities under an executory written contract set forth as an exhibit wherein the defendants Corey undertook to sell and the plaintiff and one C. B. Turner, not named as a party to the action, undertook to buy a going restaurant and cafe business, the merchandise, personal property and fixtures appertaining thereto and the unexpired term of the lease of the premises held by defendant Gus D. Corey as assignee of the original lessee of the defendants Pauff.

Plaintiff prayed for a declaration determining the validity of this contract and the respective rights of the parties thereto as against the claim of the defendants Pauff that said contract was in breach of a purported covenant in their lease with defendant Gus Corey, prohibiting assignment or underletting without the written

---

[1]Uniform Declaratory Judgments Act, Stats.1929, Chap. 22, p. 28. The applicable portions are as follows:

"SECTION 1. Courts of record within their respective jurisdictions shall have power to declare rights, status and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect; and such declaration shall have the force and effect of a final judgment or decree.

"SEC. 2. Any person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder.

"SEC. 3. A contract may be construed either before or after there has been a breach thereof."

"SEC. 5. The enumeration in sections 2, 3 and 4 does not limit or restrict the exercise of the general powers conferred in section 1 in any proceeding where declaratory relief is sought, in which a

consent of the lessors. Declaration of the rights and liabilities of the parties under the lease was also sought. Injunctive relief and general equitable relief were also prayed.

Upon application of plaintiff, the district court issued a preliminary injunction, enjoining the defendants, pendente lite, from interfering with plaintiff's peaceful use and occupation of the premises in controversy and the personal property located thereon, and restraining the defendants from negotiating or otherwise hypothecating a certain promissory note in the sum of $17,442.48, payable at the rate of $1,000 per month, which had been executed by plaintiff in part payment of the purchase price under the disputed agreement, the note then being in the possession of defendant bank as security for a

---

judgment or decree will terminate the controversy or remove an uncertainty.

"Sec. 6. The court may refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding.

"Sec. 7. All orders, judgments and decrees under this act may be reviewed as other orders, judgments and decrees.

"Sec. 8. Further relief based on a declaratory judgment or decree may be granted whenever necessary or proper. The application therefor shall be by petition to a court having jurisdiction to grant relief. If the application be deemed sufficient, the court shall, on reasonable notice, require any adverse party whose rights have been adjudicated by the declaratory judgment or decree, to show cause why further relief should not be granted forthwith.

"Sec. 9. When a proceeding under this act involves the determination of an issue of fact, such issue may be tried and determined in the same manner as issues of fact are tried and determined in other civil actions in the court in which the proceeding is pending.

"Sec. 10. In any proceeding under this act the court may make such award of costs as may seem equitable and just.

"Sec. 11. When declaratory relief is sought, all persons shall be made parties who have, or claim any interest which would be affected by the declaration, and no declaration shall prejudice the right of persons not parties to the proceeding. * * *

"Sec. 12. This act is declared to be remedial; its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations; and is to be liberally construed and administered."

certain indebtedness of the Coreys to the bank. On the same day, the district court made its order, providing that, pending the further order of the court, the plaintiff should deposit with the clerk of the court, certain sums falling due each month under the provisions of the contract of sale between plaintiff and the defendants Corey in lieu of making such payments to them.

Thereafter, plaintiff having by leave of court filed an amended complaint, the defendants Corey and the defendants Pauff separately filed their general and special demurrers thereto. In substance, the demurrer of the defendants Corey was directed to the sufficiency of the complaint to state a cause of action against them for declaratory or equitable relief or otherwise, in view of the asserted absence of a justiciable controversy. The Pauff demurrer averred in addition a misjoinder of parties defendant and a misjoinder of causes of action, in the absence of a showing of privity of contract between plaintiff and said defendants or community of interest in any question of fact or law. The defendants Corey also filed their notice of motion to strike certain portions of the amended complaint and their notice of motion to dissolve the preliminary injunction and to vacate or set aside or modify the order directing deposit in court. The defendants Pauff filed their separate notice of motion to dissolve the preliminary injunction. Defendant First National Bank of Nevada failed to appear or plead and its default was duly entered. Plaintiff filed a notice of motion to continue in full force and effect, pendente lite, the preliminary injunction and the order directing the deposit of moneys with the clerk of the court, which motion the court granted. After hearing, the court made its order and judgment sustaining the demurrers of the defendants Corey and the defendants Pauff to plaintiff's amended complaint without leave to amend, dismissing the action, dissolving the temporary injunction, and releasing the deposits paid into court by plaintiff.

The amended complaint alleged that on or about March 26, 1940, defendants Arthur C. Pauff, and Harry C. Pauff, as fee owners of the real property in controversy, entered into a ten year lease of the premises with one G. C. Christopher, terminating May 1, 1950, and providing for a rental of $170 per month, this lease being embodied in a written instrument, pleaded in haec verba as plaintiff's Exhibit "A"; that plaintiff had never been furnished with an original or duplicate original of the lease, but only with what purported to be a typewritten copy of said lease bearing the typewritten signature of said G. C. Christopher but bearing no signature of the Pauffs whatsoever; that this typewritten copy does not contain as a term or condition that the lessee shall not "let or underlet the whole or any part of said premises," but that plaintiff has been informed that such term was included in the original lease; that in view of these facts, plaintiff does not know whether or not this alleged term is in fact one of the terms of the lease; that on or about December 25, 1940, Christopher made a written assignment of the lease to defendant Gus D. Corey with the written consent of defendants Pauff; that, thereafter, defendants Gus D. Corey and John D. Corey entered into possession and occupation of the demised premises, operating thereon a restaurant and cafe business.

That on April 5, 1943, defendants Corey entered into an instrument in writing with plaintiff and with defendant C. B. Turner, to whose interest thereunder plaintiff has since succeeded; that by the terms of this instrument, pleaded in haec verba as plaintiff's Exhibit "B," plaintiff and Turner, as buyers, paid to defendants Corey, as sellers, the sum of $7,000 cash, signed a promissory note in favor of defendants Corey in the sum of $17,442.48, payable at the rate of $1,000 per month with interest at the rate of 5 percent per annum, and agreed to pay, on account of defendants Corey, the sum of $1,067.52 to the First Industrial Loan Company

of California, or a total consideration of $25,510; that it was mutually understood and agreed by the parties to this instrument that the consideration for this $25,510 paid, and agreed to be paid, by the buyers, consisted solely of the value of the unexpired term of the lease, and of the value of the restaurant and cafe business being conducted upon said premises together with such merchandise, furniture, furnishings, fixtures and equipment as pertained thereto, which it was contemplated that the buyers would take over as a going concern and operate as such for the full unexpired term of the lease; that "the entire consideration of $25,510.00 was mutually predicted upon the mutually assumed fact that the defendants, Gus D. Corey and John D. Corey, could legally contract to sell and plaintiff could legally contract to purchase the entire unexpired term of said lease and said business as a going concern, and that plaintiff could legally continue to operate the same as a going business and have legal and peaceful possession of said premises to and until May 1, 1950 at a rental of $170 per month, being the unexpired term of the said Gus Corey lease."

That by the further terms of the agreement of April 5, 1943, the sellers undertook to have the lease of the demised premises assigned to the buyers, but with the further proviso that in the event that the owners should refuse to consent to such assignment "nevertheless, in such event, it shall not affect, diminish, or nullify this agreement or the terms thereof, but the sellers shall allow the buyers to occupy the said premises under the terms of said lease without further consideration to sellers as if buyers were the assignees thereof, provided buyers pay to said Gus Corey the rentals in amount, time and manner provided for therein, which sellers agree to pay to the person or persons entitled thereto under said lease"; that the sellers undertook further, within sixty days, to deliver to the escrow holder,

defendant First National Bank of Nevada, a corporation, either the lease of the demised premises assigned to the buyer, or, in lieu thereof, the affidavit of the sellers that the owners of the premises refused to consent to an assignment of the lease; that the promissory note executed by the buyers in part payment of the consideration should be deposited with defendant corporation for collection, with the proviso that when said note had been paid in full, defendant corporation, as escrow holder, should deliver to the buyers sellers' bill of sale, affidavit showing compliance with the Bulk Sales Law, and the assigned lease, or in lieu thereof, the affidavit of sellers above mentioned; that it was further provided in said agreement that time should be the essence of the contract, that "the property in the business, lease and goods sold" should vest in the buyers only upon payment in full of the purchase price and complete performance by them of all other terms and conditions by them agreed to be performed, and that should any default be made in said payments or performance by the buyers of other terms and conditions, the sellers might at their option, either enforce payment of the entire unpaid balance under said agreement, or forfeit the interest of buyers under said agreement, reenter upon said premises, and retain as liquidated damages all sums theretofore paid by buyers under said agreement.

The amended complaint alleged performance by plaintiff, as well as his continuous possession and payment of rent; that after the order referred to all payments were deposited with the clerk of the court, and that he was ready, able and willing to continue to perform.

The amended complaint further alleged breach by the defendants Corey, and/or failure of consideration thereunder, in the following particulars: that they did not within the time specified notify the landlords, defendants Pauff, concerning the sales transaction between

themselves and plaintiff, but did, at some later date, make a colorable request upon said defendants Pauff to consent to an assignment of the lease to plaintiff; that prior to said request, however, and at times subsequent thereto, defendants Corey asked defendants Pauff to disregard their formal request for consent to assignment of the lease and to refuse to give their consent thereto; that to influence the defendants Pauff to withhold their consent to assignment of the lease, defendants Pauff falsely represented that plaintiff was irresponsible, was running down the business, and that defendants Corey would be compelled to repossess said business and premises; that defendants Pauff were influenced by said representation to withhold their consent to assignment of the lease; that consequently there has been a partial failure of consideration, consisting of the reasonable value of eighteen months of the unexpired term of said lease which plaintiff will lose in the event that plaintiff should be compelled to enter into a new lease with defendants Pauff, as thereinafter alleged; that the reasonable value thereof, and plaintiff's damage therein, is the sum of $30,000; that by reason of said actions of defendants Corey, in breach of their assignment with plaintiff, there has been a failure of consideration in regard to so much of the agreement of April 5, 1943, as provided that in the event of refusal of the owners of the demised premises to agree to assignment of the lease, the sellers, defendants Corey, would nevertheless permit the buyers to occupy said premises "provided buyers pay to said Gus Corey the rentals, in the time and manner provided therein, which sellers agree to pay to the person or persons entitled thereto under said lease"; that the terms and provisions of the agreement of April 5, 1943, aforesaid, have been rendered impossible of performance by reason of the refusal of the defendants Pauff to accept such rentals from defendants Corey, and that in consequence thereof said agreement should be reformed in this regard; that the Coreys refused to

accept the August 1943 rent and instructed plaintiff to send it to the Pauffs, who in turn refused to accept it, but served the Coreys with a notice of termination of their lease upon the ground that they had assigned or sublet without the prior written consent of defendants Pauff, in violation of the lease; that, after receiving said notice of termination from defendants Pauff, defendants Corey nevertheless demanded that plaintiff pay to them the sum of $340 as rental upon said premises for the months of August and September and informed plaintiff that unless said rentals were immediately paid to them they would declare a forfeiture of their agreement of April 5, 1943; that, pursuant to this demand and threat, plaintiff paid the Coreys $340, which they kept; that they did not within sixty days deposit in escrow their affidavit of refusal of defendants Pauff to consent to assignment of the lease, but did, at some subsequent date unknown to plaintiff, and after their acts and conduct had influenced defendants Pauff to refuse to give their consent thereto, deposit said affidavit, in escrow; that by reason of said acts and conduct of defendants Corey, said affidavit was meaningless and ineffectual.

That at a time subsequent to serving upon defendants Corey their notice of termination of the lease, to wit, on or about October 4, 1943, defendants Pauff orally offered to enter into a new lease with plaintiff for a five year term commencing October 1, 1943, at a monthly rental of $225 per month; that said offer is still subsisting; that plaintiff, although willing to enter into such new lease with defendants Pauff, cannot safely do so without the determination of the court that his contract with defendants Corey is no longer valid and binding, inasmuch as defendants Corey, in the absence of such judicial determination, will attempt to pursue the remedies of forfeiture and reentry provided in their agreement, and it will become necessary for plaintiff to contest their right so to do in protracted litigation

with the ultimate decision in doubt; that on October 14, 1943, defendants Pauff served upon plaintiff their three day notice, demanding that plaintiff surrender to them the immediate possession of said premises, and notifying plaintiff of their intention, in the event of his failure to do so, to institute legal proceedings for recovery of possession of the same.

The amended complaint further alleged that "all questions and controversies that have arisen between the parties to this action * * * can be and should be settled, adjudged and adjudicated in this one action, and that it is essential to promote the ends of justice that this entire controversy should be determined in this one proceeding so that the rights and duties of all parties interested may be finally settled and adjudicated." The amended complaint also alleged lack of an adequate remedy at law. By reason of the facts alleged, the following relief was prayed: 1. Continuance of the restraining order pendente lite. 2. Continuance pendente lite, of the order for payment into court. 3. For an injunction, pendente lite, to restrain defendants Corey and defendant bank from assigning or otherwise hypothecating the promissory note executed by plaintiff and Turner. 4. That after hearing upon the merits, the temporary injunction be made permanent, and that plaintiff be adjudged to be in lawful and peaceful possession of the premises either "under the terms and conditions of the instruments in writing hereinbefore referred to or under the proposed lease agreement" between plaintiff and defendants Pauff. That the court "determine the liability of said plaintiff to the respective defendants herein, and construe and determine the instruments set forth and described herein, and terminate the uncertainty and controversy giving rise to the proceedings herein," and determine all equities and liabilities as between plaintiff and defendants and as among the defendants themselves. 5. That in the event that total failure of consideration should be adjudged,

that the agreement between plaintiff and defendants Corey should be canceled and annulled, and that in the event that partial failure of consideration should be adjudged, the extent thereof should be ascertained and set off against the remaining indebtedness of plaintiff to defendants Corey, if any. 6. For a money judgment against defendants Corey in the sum of $25,000. 7. For other and further relief and costs of suit against such defendant or defendants as may be proper.

The record on appeal discloses sundry additional motions and proceedings attacking the amended complaint and having to do with the temporary restraining order above referred to. At one state of the proceedings the defendants Corey served and filed a "Notice of Motion to abate or dismiss" the action upon the ground that the dispute controversy or question asserted in the amended complaint had become moot, for the reason that after the filing of said amended complaint the said defendants Corey had, as plaintiffs, commenced an action against Kress and Turner growing out of the matters embraced in the amended complaint, and that such action was still pending; that the matters alleged in the amended complaint herein were in any event of a defensive nature, and could be asserted in defense of the said subsequent action. This motion was thereafter denied by the court, but solely upon the ground that the same had not been noticed in compliance with the requirements of rule X of the Rules of the District Court, and without prejudice. The record discloses that the respective demurrers to the amended complaint were orally argued at length and supported by written briefs. The record does not disclose any formal opinion or decision by the learned district judge in support of the orders complained of other than the clerk's minutes from which it appears that the court ordered that the demurrer of the defendants Corey to the amended complaint be sustained without leave to amend "upon the ground that the amended complaint

does not state facts sufficient to constitute a cause of action against the defendants or either of them and upon the further grounds that there is a defect or misjoinder of parties in that it appears that the First National Bank of Nevada, a corporation, has no community of interest whatever in said litigation, and that joinder of the defendant Arthur C. Pauff and Harry C. Pauff, if there is a cause of action against either of them, it is upon entirely different grounds, and that there is a misjoinder by joining said Arthur C. Pauff and Harry C. Pauff * * *." In all other particulars the demurrer was overruled. The court further ordered that the demurrer of defendants Pauff "upon the grounds that the amended complaint does not state facts sufficient to constitute a cause of action against them or either of them, is sustained without leave to amend." The same minutes indicate the court's order made at the same time that all moneys theretofore deposited with the clerk under the former order be released and returned to the plaintiff, and that the injunction theretofore issued be dissolved. The same minutes also show the following: "Further Ordered that this action be, and the same is hereby dismissed and the defendants may have their costs of suit incurred." Notice of these orders was given by quoting the same in full.

The notice of appeal recites that the appeal is taken from such order "and the whole thereof, and each and every part thereof" and thereupon again recites in full the order complained of.

As there is no appeal from an order sustaining a demurrer, the purported appeal from the order sustaining the demurrers is hereby dismissed. N.C.L., 1931–1941 Supp., sec. 9385.60.

Counsel's opening brief (apparently in complaince with the requirement of sec. 9385.60, N.C.L., to the effect that appellant shall in his opening brief state his points and such errors as he shall rely on) recites: "This appeal is taken from the order of the court of

August 11, 1944, sustaining defendants' demurrers to plaintiff's amended complaint without leave to amend and dismissing plaintiff's action." This leaves for the consideration of this court the appeal from the judgment of dismissal, with consideration, of course, of the error assigned in the sustaining of the demurrers without leave to amend. The appeal from that part of the order that dissolves the temporary injunction and releases to the plaintiff the funds deposited with the clerk under the prior order of the district court, will, accordingly, not require attention except insofar as it is affected by the order of this court heretofore made denying the application of the appellant for an order for a writ of supersedeas.

The statement contained in appellant's opening brief to all intents and purposes limits the appeal to the judgment of dismissal. However, the court made its order denying plaintiff's application for a writ of supersedeas, upon the stipulation of counsel that an order might be made and the court's opinion filed later. Such opinion, prepared by Honorable Harry M. Watson, district judge, commissioned by the Governor to sit with the court in this case by reason of the disqualification of Honorable CHARLES LEE HORSEY, associate justice, is hereby adopted by the court in support of the order denying the application for supersedeas.

### OPINION ON MOTION FOR SUPERSEDEAS

"As to the Notice of Motion to Dismiss the motion for a writ of supersedeas and the Demurrer to such motion, it not having been pointed out wherein appellant's Notice of Motion is in violation of any Supreme Court Rule, or is contrary to precedent, and a motion to strike a motion being unusual procedure to say the least, they are given consideration as is the Response, only as they bear upon whether the appellant's motion should or should not be granted.

"It is contended by appellant that the perfecting of

the appeal and providing the $300.00 appeal undertaking stays all proceedings in the case, and that the preliminary injunction issued and later dissolved by the trial court therefore remains in full force and effect, thereby enjoining the action of Arthur C. and Harry C. Pauff against appellant and respondents. In support of this he relies largely on Gottwals v. Rencher, 60 Nev. 35, 92 P.2d 1000, decided in 1939. It would naturally follow, it seems, that appellant would have the same contention apply to the other cases pending or threatened, which he asks to be stayed.

"The action appealed from was for a declaratory judgment, determining the legality and effect of, variously; a lease, or leases, agreement of sale, or proposed lease agreement, and various conduct of various parties, the rights and obligations of the various parties plaintiff and defendant and each of them, and praying consequential or corrective relief.

"By order of the trial court appellant and plaintiff paid to the clerk of the court installments and ground rents as of the due dates alleged in the complaint for declaratory relief. The court order provided these payments should be in lieu of payments to be made the Coreys by agreement of April 5, 1943. The Coreys were likewise restrained from endorsing or assigning the note in question.

"Defendants were enjoined by temporary injunction from doing any act to disturb the peaceful possession of plaintiff appellant and the conduct of his business at the cafe. This was dissolved when the demurrers were sustained without leave to amend.

"The question here to be determined is whether appellant is entitled to writ of supersedeas as prayed. 'Except where the court is bound to allow a supersedeas or stay as a matter of right (as where supersedeas or stay is the subject of express statutory provisions (3 C. J., Appeal and Error, sec. 1397, page 1274), an order

for a supersedeas or stay will only be granted on good cause shown and where a proper case for exercise of the court's discretion is made out.' 3 C. J., sec. 1411, page 1290. Idem: 'As a rule a supersedeas or stay should be granted, if the court has the power to grant it, whenever it appears that without it the object of the appeal or writ of error may be defeated, or that it is reasonably necessary to protect appellant or plaintiff in error from irreparable or serious injury in the case of reversal, and it does not appear that appellee or defendant in error will sustain irreparable or disproportionate injury, in case of affirmance * * * on the other hand, as a rule, a supersedeas or stay will not be granted * * * unless it appears to be necessary to prevent irreparable injury or a miscarriage of justice.' [See, also, 4 C.J.S., Appeal and Error, sec. 636.]

"The contention of appellant that the preventive temporary injunction dismissed by the trial court had the breath of life breathed into its dead lungs, by the mere formality of providing necessary undertaking for, and perfecting an appeal, does not find support by the authorities reviewed. In Hicks v. Michael et al., 15 Cal. 107, in an appeal from an order refusing an injunction, the simple question is presented, whether an appeal from an order of this character can operate to create an injunction, or prolong a restraining order, until the ruling of the judge can be reviewed by the appellate court. 'It is clear that no such effect can be given to an appeal, even when the most ample bond of indemnity is tendered. Where an injunction has been refused, there is nothing operative. A stay can only be sought of that which has an existence, and by its operation is supposed to work injury to appellant. It is therefore, from the nature of the case, only of orders or judgments which command or permit some acts to be done, that a stay of proceedings can be had. (Merced Mining Co. v. Fremont, 7 Cal. 130, 132.) Nor can an appeal operate

to create an injunction under any circumstances. * * * We think the restraining order expired by its own limitation; but for the purposes of the argument, we will regard the order as a temporary injunction and the appeal as being made from an order dissolving the same. The plaintiff is in no better condition upon this hypothesis. An appeal does not revive an injunction once dissolved, * * * if the injunction could be revived by the mere act of the party in filing an appeal, it would be giving to him, not only a power of control over the orders of the court, but of creating an injunction. (citing Wood v. Dwight, 7 Johns. Ch. N.Y., 295) * * * Supposing (an appeal) can be sustained, it is impossible that a process that is duly discharged, and functus officio, can be revived by the mere act of the party. How could this court undertake to enforce the process and punish contempts of it, in the very face of the order dissolving it? (citing Hoyt v. Gelston, 13 Johns, N.Y., 139) When a process is once discharged and dead it is gone forever; and it can never be revived, but by a new exertion of judicial power.'

■ "An order dissolving an injunction is self-executing, and is not superseded by filing an appeal bond. 32 C.J., Injunctions, sec. 735, n. 18; 43 C.J.S., Injunctions, sec. 255; Manning v. Poling, 114 Iowa 20, 83 N.W. 985.

■ "A judgment not requiring or permitting, the doing of any act will not be superseded, there being nothing on which the writ can operate in the relief or aid of appellate jurisdiction. Lickley v. Board of Education of Los Angeles County, 62 Cal.App. 527, 217 P. 133; Southern Pacific Co. v. Smith, 171 Cal. 8, 151 P. 426; Tyler v. Presley, 72 Cal. 290, 13 P. 856; Erickson v. Municipal Court, 131 Cal.App. 327, 21 P.2d 480. When the judgment is rendered, and no process is required to be issued for its enforcement, no supersedeas is allowed. In fact, there is no necessity for such writ. There is nothing to stay or supersede.

"To the same effect is, In the Matter of M. O. Graves, 62 Cal.App. 168, 216 P. 386, 387, '* * * The general rule, therefore, is that supersedeas will not issue where the judgment does not command or permit any act to be done, or where it is not of a nature to be actively and affirmatively enforced by execution or otherwise.'

■ "Nor do we feel that Gottwals v. Rencher, supra, would sustain appellant's contention. The receiver appointed in the court below made sale as ordered by the court, and filed his return and account of sale and petitioned for order confirming and approving said sale. Appellant there moved the court below for an order staying the hearing of return, account and petition, vacating the order setting said hearing, vacating said sale and for writ of supersedeas, which motion was denied. The appeal had been perfected before the sale, and notice thereof given respondents and the receiver through their attorneys, with a demand that they desist from further acts and proceedings with reference to said sale. Upon this state of facts the Supreme Court ordered a stay of proceedings for confirmation of sale, and vacated the order for such hearing, pending the appeal. In that case the order below required the doing of some act, i. e., that the receiver have the sale confirmed, as required by law. There was something on which the writ could operate and stay, something to be actively and affirmatively enforced, unless stayed. We point out that the court did not vacate the sale, as prayed, even though made after appeal had been perfected, there being nothing with reference to the actual sale then pending, on which the writ could operate. A writ of supersedeas will not function as a writ of certiorari or writ of mandamus. The remedy of supersedeas is usually regarded as injunctive or prohibitive in character and not corrective. Craig v. Stansbury, 37 Cal.App. 668, 174 P. 404.

■ "It follows therefore that supersedeas could not

function to effect a revival or reinstatement of a temporary, prohibitive injunction, once dissolved.

■ "The contention that the injunction enjoined the bringing of any action against appellant concerning matters involved in the case appealed is likewise, we think, untenable. An injunction should be so clear and certain that a party may readily know what he is restrained from doing and that he must obey it at his peril. 32 C.J., Injunction, sec. 620, p. 369, 43 C.J.S., Injunction, sec. 206; Summers v. Farish, 10 Cal. 347. The restraining order here makes no reference to litigation, multitudinous, vexatious or otherwise. If the temporary injunction could be restored, it would therefore have no such effect as contended for by appellant.

■ "We think that Dodge Brothers, Inc. v. General Petroleum Corporation of Nevada, 54 Nev. 245, 10 P.2d 341, 13 P.2d 218; Lovelock Mercantile Co. v. Lovelock Irr. Dist., 51 Nev. 179, 272 P. 1; State v. Ducker, 35 Nev. 214, 127 P. 990; and Silver Peak Mines Co. v. Second Judicial District Court, 33 Nev. 97, 110 P. 503, Ann.Cas.1913D, 587, clearly distinguished between preventive and mandatory injunctions, determining that on an appeal from the temporary 'mandatory' injunction the appellant is entitled as a matter of right to a stay of proceedings under the injunction upon the filing of a proper stay bond. See also Gottwals v. Rencher, supra, deciding that stay bond be required only when necessary to protect appellee against damages he might sustain by reason of an unsuccessful appeal."

The application for an order for a writ of supersedeas was accordingly denied.

■ We emphasize the opening paragraph of the foregoing opinion of Honorable Harry M. Watson with reference to the motion of the respondents to dismiss the notice of motion of appellant for a writ of supersedeas. This court has, on several occasions, condemned the practice of submitting a motion to dismiss a motion.

With as much propriety, or perchance with greater propriety, could the original movent notice a motion to dismiss the motion to dismiss the motion. The very statement indicates the confusion that is bound to ensue. If there is a good reason why a motion should not be entertained by the court, such reason may be advanced as a ground in support of the denial of the motion. The confusion is not confined to the mere records of this court, but to the orderly presentation of oral argument to the court. If a litigant has a right to move to dismiss a motion, he would presumably have a right to open and close the argument on his motion to dismiss the motion, and such argument, followed in turn by the arguments on the motion proper, would seriously affect the orderly and dignified presentation of matters to this court.

#### OPINION ON THE MERITS

Certain provisions of the Corey - Kress contract amounted substantially to this: The Coreys would obtain the consent of the Pauffs to the assignment of the lease; but, failing this, the Coreys nevertheless covenanted for the quiet and peaceable possession by Kress for the remainder of the term.

Eliminating for the moment all consideration of the subsequent suits brought by the Pauffs and the Coreys, as indicated in appellant's petition for a writ of supersedeas, and as indicated by respondents' contention that the subsequent suit by the Coreys made declaratory action moot, and having in mind only the situation as it appeared to the district court at the time of the submission of the general and special demurrers to the amended complaint filed by the respective groups of the defendants, we find the following situation: The Pauffs had served on the Coreys a notice of termination of lease by reason of a breach of the covenant against assignment and subletting without written consent. Less than two months later the Pauffs served on Kress

a three day notice to quit "or the undersigned will institute legal proceedings against you to recover possession of said premises." Kress tried to pay the current rentals to the Pauffs. They refused to accept. Kress paid the rentals to the Coreys, who in turn tried to pay the same to the Pauffs. Again the Pauffs refused to accept—apparently abstaining from any act that would constitute a waiver of their asserted right to terminate the Pauff-Christopher-Corey lease, or as a waiver of their asserted right to maintain an appropriate action against Kress pursuant to the three day notice to quit. Despite this situation the Coreys insisted that Kress continue to pay the accruing monthly rentals, which he did, and which rentals the Coreys appropriated to their own use. The Coreys also insisted that Kress pay the accruing monthly payments of $1,000 and interest under the contract and as evidenced by his promissory note.

There has been much discussion by respondents of the asserted rule that an action for a declaratory judgment is not a substitute for other and ordinary actions open to a party as a matter of right, but respondents have not indicated what these actions or defenses would be under the situation presented by the amended complaint. Let us explore the question as to whether such other and ordinary actions or defenses were effectively open to him without resort to the declaratory judgment act for relief. Independently of his contract with the Coreys, he faced an unlawful detainer action as threatened by the Pauffs. Against such action his analysis of possible defenses might include. (1) "My information is that your lease to Corey does not contain a covenant against assignment or subletting; therefore, I am safe in my assignment of the lease. (2) The instrument, under which I am holding, creates only a license in me to occupy the premises and is therefore not a violation of a covenant against assignment and subletting. (3) The covenant against assignment and subletting is so unreasonable as not to be enforceable—at least to the extent

of terminating the tenancy. (4) You have waived the right to enforce this covenant by your prior consent to the assignment by Christopher to Corey. (5) You are estopped from asserting this right by impliedly accepting my assignment or subtenancy. (6) The Coreys have put me in possession of these premises and have given me what amounts to a covenant for peaceful possession so long as I pay my rentals; therefore, I may call them in to defend against your action, which you say is a breach of their covenant with you."

But whatever position Kress might be taking as to the foregoing situation, he was confronted with the very imminent possibility that the threatened action by the Pauffs would result in a restitution of the premises to them. Was he compelled to await this outcome, and in the meantime continue to make monthly payments of rental to the Coreys and monthly $1,000 payments to them on his promissory note? Or was he not entitled in some way to effect a suspension of such payments to the Coreys until it could be judicially determined that such payments were not on account of a consideration that had materially failed? If entitled to relief of this nature, how could he accomplish it? In filing his complaint for a declaratory judgment determining the rights and liabilities of the several parties, is he simply, as asserted by respondents, asking the advice of the court? The prayer of his complaint is for a temporary injunction or injunction pendente lite to preserve the status quo, that he be permitted pendente lite to make his monthly payments into court, that pendente lite the Coreys be restrained from negotiating the promissory note, and that upon the hearing upon the merits, he be adjudged to be in the lawful possession of the property, or, otherwise, that the financial situation between him and the Coreys, including credits for the failure of consideration of the Corey-Kress contract and including damages suffered by him by reason thereof, be determined.

One more element should probably be first considered. The consideration for the payment by Kress of $25,510 was the sale of the restaurant business, the delivery of the furniture, fixtures and supplies and the assignment of the remainder of the term of the Pauff-Corey lease. That term had eighteen months to run. Trial courts are daily considering far more difficult questions than the solution of the question of the extent to which the consideration actually passed from the Coreys to Kress and the extent to which it would have failed if Kress were dispossessed by the Pauffs. We consider this then a question that the trial court might well have been able to determine.

If we accept the allegations of the amended complaint as true, then it would appear that no controversy would have arisen either between the Pauffs and the Coreys (see notice of cancellation of lease) or between the Pauffs and Kress (see three day notice to quit) or between the Coreys and Kress (threatened failure of consideration to Kress if he is dispossessed, and threatened forfeiture of his contract if he fails to make his payments promptly), if the Pauffs had consented to the assignment from the Coreys to Kress. Kress would then have been protected in his tenancy to the end of the term, the rentals would have been paid to the Pauffs, the monthly payments made to the bank for the Coreys and duly credited on the note, and the bill of sale in due course delivered out of escrow by the bank to Kress—all subject to the exercise by any of the parties of their remedies in case of breach of the covenants of their contracts. The controversies arose, and the present impasse was reached, when the Pauffs refused to consent to the assignment. Not only had the Coreys covenanted to procure such consent (with the alternative heretofore mentioned) and not only had they failed to obtain it, but, again accepting the allegations of the amended complaint as true, they wrongfully and by

misrepresentation of facts prevailed upon the Pauffs to withhold it. It was under these circumstances that Kress, who had made a $7,000 down payment to the Coreys, met all covenants for payment of rent, made all accruing $1,000 monthly payments on his note, paid an obligation of $1,067.52 on behalf of the Coreys as he had agreed, and was ready, able and willing to continue to perform, asked, not the advice of the court, but a declaration of his rights and liabilities in the premises and the protection of his rights by injunction, set-off, reformation of his contract, etc.

The foregoing analysis of the situation appears to us to be essential before laying alongside of appellant's claims for relief the yardstick of the declaratory judgment act and the construction placed upon that act under similar or analogous situations by the courts and the text writers.

The State of Nevada adopted the Uniform Declaratory Judgment Act in 1929. It was first adopted in Tennessee and Wyoming in 1923. Code Tenn.1932, sec. 8835 et seq., Comp.St.Wyo.1945, sec. 3-5801 et seq. The federal Declaratory Judgment Act was passed in 1934. 28 U.S.C.A., sec. 400. At the present time only five states in the union have failed to incorporate such an act into their statute law. For many years prior to the adoption of any such statutes courts have nonetheless been rendering declaratory judgments, that is, the declaration of the pre-existing rights of the litigants without any coercive decree, in such cases as quiet title suits, the construction of wills and the interpretation of deeds, the determination of marriage relations, the validity of instruments, interpleader suits, etc. Under the Uniform Declaratory Judgment Act the door has been opened to the "adjudication of innumerable complaints and controversies not theretofore capable of judicial relief," Borchard, Declaratory Judgments (1934) Preface, and courts may now function to vindicate challenged rights, clarify and stabilize unsettled

legal relations and remove legal clouds which create insecurity and fear. Id.

In the many hundreds of cases that have reached the courts of last resort in the various states (which have not hesitated to draw upon the decisions of the courts of England, Scotland, Canada, Australia and others) there has naturally been built up a structure of case law prescribing the conditions and defining the limits under and within which declaratory relief may be obtained. Appellant and respondents have both cited State ex rel. La Follette v. Dammann, 220 Wis. 17, 264 N.W. 627, 628, 103 A.L.R. 1089, which, citing Brochard, supra, crystallized the requirements for declaratory relief as follows:

"The requisite precedent facts or conditions which the courts generally hold must exist in order that declaratory relief may be obtained may be summarized as follows: (1) there must exist a justiciable controversy; that is to say, a controversy in which a claim of right is asserted against one who has an interest in contesting it; (2) the controversy must be between persons whose interests are adverse; (3) the party seeking declaratory relief must have a legal interest in the controversy, that is to say, a legally protectible interest; and (4) the issue involved in the controversy must be ripe for judicial determination. Declaratory Judgments, Borchard, pp. 26–57."

Respondents insist that none of these conditions have been met by the amended complaint, while appellant insists that the pleading shows the existence of all of them. With the latter view we are in accord.

Respondents rely on the La Follette case above cited, and in which relief was denied on the ground that only the advice of the court was sought, but the case is clearly distinguishable. The Governor of Wisconsin desired to make various appointments (a) in cases where the incumbents' terms had expired and they were holding over, (b) in cases where the incumbent had died and a

vacancy existed, (c) in cases where the vacancy occurred before the 1935 session of the legislature but were not filled during that session, (d) in cases where the vacancy occurred during that session but had not been filled, and (e) in cases where the vacancy might occur the following year while the legislature was not in session. The secretary of state insisted that the appointments could not be made and that he would not honor the commissions which the governor was about to issue, nor would he audit or pay the salaries. The court held that "difference of opinion is not enough to make a justiciable controversy," citing Garden City News v. Hurst, 129 Kan. 365, 282 P. 720, and Williams v. Flood, 124 Kan. 728, 262 P. 563. It held that as no appointments had been made, there was none who could assert a legally protectible interest; that no rights had become fixed but were possible future or contingent rights; that there was no justiciable controversy between the governor and the secretary of state, and the prospective appointees were not before the court so that their rights could not be prejudiced by any ruling made and the controversy terminated. We are unable to conclude that the La Follette case governs the instant one.

The same applies to City and County of Denver v. Lynch, 92 Colo. 102, 18 P.2d 907, 86 A.L.R. 907. As to the thirteen interrogatories propounded, the court held that they were but remotely connected with the litigation, many of them were abstract and many of them involved the settlement of mere academic questions.

Respondents rely strongly on Washington - Detroit Theater Co. v. Moore, 249 Mich. 673, 229 N.W. 618, 68 A.L.R. 105, which upheld the constitutionality of the Michigan Declaratory Judgment Act—the original act having been held unconstitutional by the same court in Anway v. Grand Rapids Ry. Co., 211 Mich. 592, 179 N.W. 350, 12 A.L.R. 26. The court recited numerous holdings as to conditions under which declaratory relief

would not be given, stating frankly, however, that the rules and citations were taken from the notes in 12 A.L.R. 52, 19 A.L.R. 1124, and 50 A.L.R. 42, and were not to be taken as advance notice as to the future position of the court. The purpose of the citations was to support the court's view that the amended act was constitutional and did not violate accepted concepts. It is significant that the court sustained the lower court in entertaining jurisdiction of the complaint for declaratory relief. Plaintiff in that case had a ninety-nine year lease on defendant's building and claimed the right to demolish it and erect a new one for other than theater purposes. Defendant denied plaintiff's construction of the lease and threatened to forfeit it if plaintiff commenced destruction of the building or used it for other than theater purposes. With these facts appearing from the complaint, the Michigan Supreme Court held that the Circuit Court had properly refused to dismiss the bill. The plaintiff Theater Company sought not only a declaration of its rights under the lease but an injunction restraining defendant from interfering with destruction of the building or attempting to forfeit the lease. Here appellant sought a declaration of his rights under the two instruments referred to and an injunction "restraining * * * the defendants * * * from interfering with the (his) peaceful possession, use and freedom of the real property and the improvements thereon * * *." So far as concerns the defendants Pauff, the ultimate ruling in the case supports appellants view.

Before leaving the Washington-Detroit Theater case it should be noted that Borchard criticizes the recited conditions mentioned in this dictum and says that the quoted A.L.R. notes are not sustained by all of the authorities cited—a number of the cases not being actions for a declaratory judgment at all. He also criticizes the limitation, though it applies in most cases, that the declaration may not be had when the danger

"is merely apprehended or feared," citing the example of the clearing of clouds on title through documents on record though no claim has been asserted under such documents. Borchard, Declaratory Judgments (1941) 165. In any event, we are satisfied that the limitation does not apply here where the claims, demands and threats of both groups of defendants have been alleged.

Respondents also place great reliance on the case of Millard County et al. v. Millard County Drainage District No. 1 et al., 86 Utah 475, 46 P.2d 423, 425. In that case plaintiff filed a quit claim title suit against certain named defendants claiming some interest in the land. Millard County attempted to join as a plaintiff against other defendants claiming interests in other lands not described, "so that not only have we two parallel and independent suits in the same action in which the only cohesive is the fact that there are law points in common which will be controlling in both cases, but we have one of the law suits without any definite subject-matter upon which a judgment can operate. * * * The statute did not intend to dispense with the necessity of having a particular and specific subject-matter such as a particular piece of real estate, chattel, person, written instrument, chose in action, debt, estate, fund, or other definite subject in respect to which the litigation applied or upon or in regard to which a judgment could operate." Here both the Kress-Corey controversy and the Kress-Pauff controversy operate upon the same thing—the right to the possession of the cafe property. The two controversies are more in the nature of those described as being "hooked up in series," in regard to which the same court says: "In some cases controversies may also be hooked up in series. This is when they are so connected as to make it imperative to determine one as a condition for determining the other." This problem is peculiarly present in the instant case. See, also, in this regard: Webb-Boone Paving Co. v. State Highway Commission et al., 1943, 351 Mo. 922, 173 S.W.2d 580;

Maryland Casualty Co. v. Hubbard, D.C., 1938, 22 F. Supp. 697; Alfred E. Joy Co., Inc. v. New Amsterdam Casualty Co., 98 Conn. 794, 120 A. 684.

Respondents insist that rather than a present controversy, appellant's amended complaint simply pleads a fear that certain controversies will or may arise in the future, that they are remote and contingent and may not be reached by a declaratory suit. In support of this contention respondent relies upon Nashville Trust Co. v. Dake, 162 Tenn. 356, 36 S.W.2d 905, which approves earlier Tennessee cases to the effect that the statute does not contemplate declarations upon remote contingencies or abstract or incidental questions. Most other authorities agree with this principle under the general theory that an actual controversy must exist—or at least the ripening seeds of a controversy. In the Nashville Trust Company case, however, it appears that declaratory relief was sought by a judgment creditor of a beneficiary of a trust estate for life in order to determine what the rights of such judgment creditor would be after the decease of the beneficiary. The suit was brought during the lifetime of the beneficiary who had a life expectancy of over twenty years, and it was under such situation that the Tennessee court held that a construction or declaration of an issue so remote should not be made. To like purport is In re Straus' Estate, 307 Pa. 454, 161 A. 547. During the lifetime of the life tenants of a testamentary trust the executors of the decedent's estate sought a declaration as to the rights of the remaindermen. It was alleged by the executors that it was important to determine whether the decedent's interests constituted a vested remainder so that certain tax liabilities could be determined. The court held, however, that such determination would have to await the filing of the accounts of the trustees upon the death of the life tenants. In support of such rule against declaration of future remote and contingent controversies, respondents also rely upon Mulcahy v. Johnson, 80 Colo. 499,

252 P. 816; Gorham v. Gorham, 99 Conn. 187, 121 A. 349, and other cases. We do not consider them in point, although we may note in passing that in some of these cases the facts approach closely to cases in which declaratory relief has been awarded in later cases giving a broader scope and greater liberality to the purposes of the statute.

Respondents say: "Appellant would like to continue on with the Corey-Kress contract except that he *fears* what defendants Pauffs, the landlords, might do to him if he so continues; i. e., he *fears* that if he does so, the Pauffs will carry out *what he considers* their threat to remove him from the premises, * * * or, as an alternative, he would like to fail to perform the unperformed portion of the Corey-Kress contract by retaining the balance of the money that he owes the Coreys and enter into a new lease contract with defendants Pauff, except that he *fears* what the Coreys might do to him for breach of his contract with them if he does so." This is perhaps not a strained picture of the situation, which is, however, a little more complicated. The Pauffs' three day notice to quit, with the further notice that legal proceedings will otherwise be taken, is, however, not accurately characterized as something which "the appellant considers a threat to remove him." Anyone would consider it a threat. It was not only a threat, it was a definite notice that a dispossessory action would be commenced, and it was also a definite statutory prerequisite to the bringing of such an action. It followed the notice by the Pauffs to the Coreys of termination of the tenancy by reason of the breach of the covenant against assignment and subletting. The "fear" of what the Coreys might do was of just as present a controversy as witnessed by the action brought against Kress by the Coreys, as disclosed by the supersedeas record herein to which both parties have referred.

The cases are full of examples in which actions for declaratory relief have been entertained to determine

the rights of landlords, lessees and sublessees under various contentions as to what acts or conditions might constitute a breach of certain covenants of the lease. In Levco Theater Corporation v. Mandy Amusement Corporation, 262 App.Div. 776, 27 N.Y.S.2d 785, a sublessee was permitted to sue the original lessee for a declaratory judgment upon the plaintiff's claim that it was entitled to a reduction in rent under its sublease equal to that obtained by the original lessee from his lessor, the court saying: "There is a real issue as to whether the agreement that the rentals under the two leases should be the same is not to be read into the sublease. Since plaintiff faces the hazard of losing its lease through dispossess proceedings if it refuses to pay its original rent, which is still being exacted, the case is a proper one for a declaratory judgment." In Leibowitz v. Bickford's Lunch System, 241 N.Y. 489, 150 N.E. 525, a sublessee, in order to induce the original lessor to consent to a sublease from the original lessee to the sublessee, guaranteed the payment of the lessee's rent to the lessor. The sublessee, as a matter of convenience, paid rental directly to the successor of the original lessor, from whom the sublessee subsequently demanded a renewal or extension of the term, under the provisions of a three-party agreement that had been executed. The original lessor's successor refused but continued to collect the rents from the sublessee. The suit for declaratory judgment was filed by the sublessee against both the lessor's successor and the original lessee, and the court rendered a judgment defining the rights of the parties. This involved the mutual rights and obligations of the defendants as well as those existing between the plaintiff and the defendants. In Webb-Boone Paving Co. v. State Highway Commission, 351 Mo. 922, 173 S.W.2d 580, 584, the original contractor sued the State Highway Commission and also the subcontractor for a declaration of the rights of the subcontractor, if any, against the plaintiff and of the plaintiff, if any, against

the Commission. This grew out of the demand of the subcontractor for approximately $10,000 additional compensation because certain theretofore undisclosed structures had been encountered in its excavation work. The court reviewed the authorities at some length, and stated: "If, as charged in plaintiff's petition, the rights arise out of an interrelated transaction and are interdependent, the proceeding under the declaratory judgment Act may settle the rights of the several parties to the transactions and avoid the necessity of separate suits. * * * the reasoning is applicable here of cases holding that the Act may be invoked to declare the rights of an insurer and an insured with respect to whether a policy of insurance protects the insured against liability to a third person." Like the insurance cases hereinafter mentioned, the plaintiff in the action sought to determine his rights against the one defendant which were contingent upon his liability to the other defendant. The court found the case analogous to Alfred E. Joy, Inc. v. New Amsterdam Casualty Co., 98 Conn. 794, 120 A. 684, abstracting that case as follows:

"Joy Company contracted to paint a Grace Hospital Society building for $10,995. It subcontracted the painting to one Hawley for $10,000. The subcontract authorized Joy Company to complete the work under certain contingencies and, in such event, to deduct the expense incurred from moneys due or to become due Hawley, with Hawley also agreeing to pay any expense so incurred in excess of moneys due him as well as any liens arising out of his default. The New Amsterdam Casualty Company entered into a surety bond on behalf of Hawley to the Joy Company. Hawley defaulted. Joy Company completed the painting. Two lien claims, aggregating $1,670, were filed. The Hospital Society refused to pay Joy Company a balance of $1,890 and Hawley and his surety refused to discharge or take action with respect to the lien claims. Joy Company's

action for a declaration of the rights between itself, Hawley and his surety, the lienors and the Hospital Society was upheld. The declaration of the rights of the Joy Company against the Hospital Society was contingent upon the declaration of the rights of the lienors, and against Hawley's surety was contingent upon the rights of said lienors."

In Tolle v. Struve, 124 Cal.App. 263, 12 P.2d 61, 63, defendants Struve had executed a ten year lease to plaintiffs and covenanted to build a theater and store building on the premises. Plaintiffs subleased to defendant Clark who entered into a partnership with defendant Atkinson. The Clark and Atkinson interests thereafter vested in Sutton, the appellant. Defendants Struve had conveyed to defendants Lavery and Gustin. Thereafter Sutton claimed the construction to be faulty and the building to be deteriorating and for such reasons attempted to terminate her tenancy under her sublease. The plaintiffs refused to agree to such cancellation, but on the same ground attempted to terminate their liability under their original lease. The owners refused and plaintiffs brought their action for declaratory judgment, joining as defendants the original lessors and assignees, the present sublessees and the intermediate sublessees, asking for a construction of the two leases involved and the rights of the parties thereunder. The court declared the rights of all of the parties, holding them all bound by the lease and the rentals due between the parties, respectively. Sutton appealed, contending that there was no justiciable controversy. The court said, adopting the opinion of the trial judge:

" 'I do not believe a pleading fatally defective which states facts from which it is manifest that there is such a controversy, though the pleading does not label it a controversy, or say, in so many words that, as to a given issue of law, one party has thrown down the gauntlet. But, however that may be, it does appear, from the complaint, that the defendants, Clark, Sonne-

man, and Sutton became obligated to the plaintiffs upon the sublease; that, having succeeded to the interests of the rest, the Suttons undertook, under claim of right based on the alleged condition of the building, to cancel the sublease, and refuse to pay rentals thereunder and claim no longer to be bound thereby, and that the plaintiffs refuse to acquiesce in such cancellation. This, I think, is tantamount to saying that the plaintiffs dispute the legal right of the Suttons to do what they have undertaken to do. It further appears from the complaint that the plaintiffs, under claim of right based on the alleged condition of the building and the alleged failure of their lessors to properly maintain it, undertook to cancel the basic lease, and that Mrs. Lavery and Gustin refused to acquiesce in that cancellation, and claim that the plaintiffs had no right to terminate the lease. It cannot be gainsaid, therefore, that the complaint shows an actual controversy between the plaintiffs and Mrs. Lavery and Gustin, and that the two controversies are very intimately connected together. The complaint, therefore, does show on its face that there are "actual controversies relating to the legal rights and duties of the respective parties." ' "

"We are satisfied that appellant is arguing for too narrow a construction of our declaratory relief statute, and one which, if adopted, would seriously impair a statute which has already proved, and should hereafter increasingly prove, a valuable enlargement of the judicial power of our courts. It was a defect of the judicial procedure which developed under the common law that the doors of the courts were invitingly opened to a plaintiff whose legal rights had already been violated, but were rigidly closed upon a party who did not wish to violate the rights of another nor to have his own rights violated, thus compelling him, where a controversy arose with his fellow, to run the risk of a violation of his fellow's rights or to wait until the anticipated wrong had been done to himself before an adjudication

of their differences could be obtained. Thus was a penalty placed upon the party who wished to act lawfully and in good faith which the statute providing for declaratory relief has gone far to remove. We feel that the courts should construe the statute with reasonable liberality so that, in the language quoted, supra, from Hess v. Country Club Park, [213 Cal. 613, 2 P.2d 782] it may not 'lose a large part of the value which, upon its enactment was supposed to attach to it.' "

The opinion of Judge Yankwich, in Maryland Casualty Co. v. Hubbard, D.C., 22 F. Supp. 697, 700, has been cited with approval in a great many cases. He held that an insurer issuing a nonownership public liability policy to an employer whose employee, while operating an automobile with the consent of an owner protected by a public liability policy containing omnibus clauses, caused injuries, could maintain a bill for declaratory relief against the owner's insurer on the theory that the employer's insurer's policy was merely excess coverage, that the automobile owner's insurer's policy was primary coverage, and that the owner's insurer had the duty of defending the injured party's action against the alleged employee and employer, notwithstanding the automobile owner was not a party to such action. Quoting Borchard, the opinion emphasizes the fact that the trend is to extend the benefit of the declaratory judgment acts to the interests of parties which are jeoparded or challenged even before a right of action exists or a cause of action accrues. The cases are collected and digested, including many of the cases referred to in this opinion, and the learned district judge agrees with the cases cited to the effect that "the benevolent purposes of the statute should not be thwarted by narrow and technical construction," and that the declaration should be made "whether there be a cause of action or not" (other appropriate facts appearing). The court held "that the preventive character of declaratory relief permits the adjudication of the relationship between the

two insurers here and of their conflicting legal interest, when it is necessary in order to define the plaintiff's obligation to the other defendants * * * (the plaintiff) may seek only an adjudication of freedom from claim." The court conceded a lack of privity and conceded that the defendant-insurer might not be liable to the plaintiff at the time of filing the complaint. It becomes unnecessary to cite the numerous insurance cases in which this theory has been generally upheld. Many of these cases will be found cited in the Maryland Casualty Co. case and in the case notes therein referred to and in the later cases in which the Maryland Casualty Co. case has been cited. There is, in our opinion, a complete analogy between the lessor-lessee-sublessee cases, the liability insurance cases, the owner-contractor-subcontractor-surety cases, and the instant case.

In a timely article entitled "Atrocities of Declaratory Judgments Law" by William P. S. Breese (31 Minnesota Law Review, 575, published in May 1947), the author refers to many "basic misconceptions and misapplications" of the declaratory judgment acts as revealed in recent decisions. These are declared to result from (1) failure to appreciate the declaratory judgment as an alternative remedy, (2) failure to recognize it as a remedy based on a justiciable controversy, and (3) failure to recognize it as a remedy sui generis. Numerous cases are cited in which the author claims that the remedy was erroneously withheld (1) because another remedy was available, (2) where the coercive effect of other available relief was believed preferable, (3) where further administrative relief was available, (4) where the trial court was held not to have abused its discretionary powers in denying relief, (5) where the court failed to distinguish the declaration asked from a mere advisory opinion, and (6) where it failed to distinguish justiciable controversies. Although it is to be regretted that the apparent limitations of the purpose of the article did not permit citation and discussion of cases

dénouncing the narrow limits thus placed on the appli-
cation of the act by these decisions, and stated only
that their failure to understand the basic fundamentals
of the remedy was "despite the learned and repeated
efforts *of the proponents of the declaratory judgment* to
*educate and correct the bar and the judiciary*" we are in
accord with the view that many of the decisions thus
critized gave too narrow and limited construction to
the purposes of the act. This attitude on our part is,
we think, clear from our adoption and approval of the
broader and more liberal concept found in the cases
cited supra. We disavow, however, any intention to
"correct and educate" those courts that disagree with us,
and for whose opinions we have the greatest respect.

Professor Edwin Brochard, whose 1934 and 1941
editions of his work on Declaratory Judgments have
been quite generally cited by the courts, has in a more
recent article said: "The declaration has opened the
shutters of the forensic camera much wider (than the
limits of equity jurisdiction) and admits to judicial
cognizance an entirely new group of interests, includ-
ing aggrieved persons who, being prospective defend-
ants to ordinary actions, were not theretofore perceived
by the law until they were sued. They were not allowed
to initiate proceedings. As already observed, the dis-
quietude and uncertainty of a prospective defendant and
obligor, like an alleged infringer of patents, the cov-
enantors of a building restriction, lessees equally with
lessors, justify judicial relief." The Next Step Beyond
Equity—The Declaratory Action. 13 The University of
Chicago Law Review, 145, 159 (Feb. 1946). The views
there expressed are likewise followed in a still more
recent article by Mr. Duke Duvall of the Oklahoma Bar.
The Declaratory Action, 21 Tulane Law Review, 559
(June 1947). Respondents will find reference in these
articles to many cases, in addition to the ones respond-
ents have cited, in which declaratory relief was denied
for the same reasons here urged by respondents—that

there was no justiciable controversy, that the controversy was not ripe, that other remedies were available, that plaintiff sought simply relief from his fears, that he was in effect asking only for the advice of the court, that the matter lay in the discretion of the trial court, that the instruments in question were unambiguous in their terms and needed no judicial construction, that the declaration was sought on a remote contingency, that there was a misjoinder of defendants on account of the lack of privity, that the case would involve the trial of disputed facts, etc. Such of those cases as are in point and are opposed to the views we have indicated, we have decided to reject in favor of the more liberal view.

Appellant and respondents both discuss at great length in their briefs questions dealing with the question of the propriety of the action of the court in "dismissing" the amended complaint upon sustaining the general and special demurrers thereto. In our view that the amended complaint states a cause of action for a declaratory judgment coupled with the other relief sought (though not necessarily all of it) and that the defendants are properly joined, it becomes unnecessary to pass on the points raised in such discussion.

Both parties likewise discuss at length the action of the court in issuing the original restraining order. It purported to restrain the defendants "pendente lite," but contained provisions permitting prompt hearing and determination of motions to dissolve or modify it or keep it in effect. It was comparable to the better practice of issuing a show-cause order why an injunction pendente lite should not issue and temporarily restraining the defendants (proper bond having been given) pending the return of the order to show cause. It seems clear, in any event, that injunctive relief may properly be coupled with a prayer for a declaratory judgment. If this be so, we see no reason why, under the recognized practices and usages of equity, and under

40

statutory provisions, the status quo may not in a proper case be preserved in the meantime to prevent irreparable injury. So many months have elapsed since the issuance of the restraining order and the order for deposit of funds in court and since the dismissal of the action and the order of this court denying a supersedeas; and the appeal being limited, by the assignment of appellant's brief, to the judgment of dismissal, no ruling by this court appears to be in order affecting the proceedings had in connection with the injunction pendente lite.

A great deal of discussion is had by both parties with reference to the province of equity practice, and with reference to actions under the Uniform Declaratory Judgment Act, to award relief to prevent a multiplicity of actions. As we are satisfied that under sec. 11 of the act, and under the provisions of our civil practice act (N.C.L. sec. 8556, as amended, Stats.1939, p. 32) all defendants have been properly joined, we do not find it necessary to determine the applicability to the present action of the equitable remedy of preventing a multiplicity of actions.

Neither the Coreys nor the Pauffs were prejudiced in making the bank a defendant. As the holder in escrow of certain documents and as the holder for collection of the note described it found itself subject to the conflicting demands of the parties and could probably have interpleaded them and been relieved from further responsibility. Virtually the same effect was achieved when it refused to answer and permitted its default to be entered. It thus remained subject to the orders of the court with reference to the disposition of documents still in its hands.

The parties briefed at length the propriety of that part of the trial court's order sustaining the demurrer which denied the plaintiff the right to amend. As it is our view that the amended complaint stated a cause of

action, and that it was error to sustain the respective demurrers, it is unnecessary to pass on this question.

That part of the order and judgment appealed from which purports to dismiss the action is hereby reversed, with costs, and the case is remanded with instructions to overrule the said demurrers and permit the respective respondents to answer, subject to the right in plaintiff further to amend his petition if he so desires, and for such further proceedings as may appear proper in conformity with this opinion.

EATHER, C. J., and WATSON, District Judge, concur.

At the time of the argument and submission of the above case the Court comprised TABER, C. J., DUCKER, J., and HORSEY, J. HORSEY, J., being disqualified, the Governor commissioned Honorable HARRY M. WATSON, District Judge of the Seventh Judicial District, to sit in his place. Thereafter, EATHER, C. J., was appointed to fill the vacancy caused by the death of DUCKER, J., and BADT, J., was appointed the fill the vacancy caused by the death of TABER, C. J. Thereafter, by stipulation of the parties, the case was resubmitted to EATHER, C. J., BADT, J., and WATSON, District Judge.