SOUTHERN PACIFIC COMPANY, a Corporation; WESTERN PACIFIC RAILROAD COMPANY, a Corporation; and UNION PACIFIC RAILROAD COMPANY, a Corporation, Appellants, v. HARVEY DICKERSON, Attorney General of the State of Nevada, Respondent.

No. 4803

December 14, 1964                                397 P.2d 187

*Marion B. Plant* and *Brobeck, Phleger & Harrison,* of San Francisco, for Appellants.

*Calvin M. Cory* and *Deaner, Butler & Adamson,* of Las Vegas, for Appellant Union Pacific Railroad Company.

*Woodburn, Forman, Wedge, Blakey, Folsom and Hug,* of Reno, for Appellants Western Pacific Railroad Company and Southern Pacific Company.

*Robert L. Pierce, William R. Denton, Frederick E. Fuhrman, John J. Corrigan,* of San Francisco, for Appellant Southern Pacific Company.

*Harvey Dickerson,* Attorney General, for Respondent.

## OPINION

By the Court, BADT, C. J.:

Plaintiffs (appellants herein) filed their complaint in the court below seeking declaratory relief in a judgment declaring (1) that NRS 705.390, properly construed, does not require the employment of "firemen" on appellants' diesel freight locomotives; (2) that if construed to require such employment, it would violate the due process clause (Art. 1, § 8) of the Nevada Constitution.

This appeal is from an order dismissing the complaint. The trial judge was of the opinion that NRS 705.390 requires the employment of a fireman on appellants' diesel freight locomotives when operating outside of yard limits, and that the requirement does not violate due process.

The statute in question is known as the "Full Train Crew Law" and reads as follows:

"705.390   Full train crew required:   Crews of four or five persons;   protection of flagmen employed on April 1, 1963.

"1.   It shall be unlawful for any person, firm, company or corporation engaged in the business of common carrier, operating freight and passenger trains, or either of them, within or through the State of Nevada, to run or operate, or permit or cause to be run or operated, within or through this state, along or over its road or tracks, other than along or over the road or tracks within yard limits:

" (a) Any freight or passenger train consisting of two cars or less, exclusive of caboose and engine and tenders, with less than a full crew consisting of not less than four persons, to wit, one engineer, one fireman, one conductor, and one brakeman * * *."

Section 1 (b) of this statute requires a full crew of one engineer, one fireman, one conductor, and two brakemen for trains of three or more and less than 50 cars; section 1 (c) requires the same on trains of more than 50 cars; and section 2 applies to flagmen.

The complaint alleges that the statute was enacted long prior to the invention and development of diesel locomotives and at a time when all trains operating in Nevada were drawn by steam locomotives that the term "fireman" referred to an employee assigned the function of attending the fire and maintaining the steam pressure on a steam locomotive; that all freight trains now operated by plaintiffs in or through the State of Nevada, or which will so be operated within the predictable future are and will be drawn by diesel locomotives; that on such diesel locomotives there is no fire to attend and no steam pressure to be maintained; that on all of plaintiffs' said freight trains drawn by diesel locomotives, there is stationed in the cab of the locomotive an employee known as the "head brakeman" because of his station at the head of the train; that each of the plaintiffs requires that the head brakeman remain in the cab of the locomotive at all times while the train is in motion between terminals, and that he

is there available, and is fully qualified, to perform all duties, including duties relating to safety, that might require the presence in the cab of the locomotive of an employee other than engineer.

Respondent moved to dismiss the complaint on the grounds (1) that it failed to state a claim; (2) that no justiciable issue existed warranting declaratory relief; (3) that defendant is not charged with the duty of enforcing the statute; but (4) that the Public Service Commission is charged with the duty of supervising and regulating the operation of railroads in the state.[1]

For the purposes of the motion to dismiss, the allegations of the complaint must of course be accepted as true.

The situation that gave rise to the prayer for declaratory relief was as follows:

Pursuant to Public Law 88–108, enacted by the Congress of the United States on August 28, 1963, plaintiffs and other railroads, and unions representing operating personnel of said railroads, including the union representing firemen, submitted to a Board of Arbitration constituted as provided in said Public Law 88–108 certain disputes, including a dispute regarding the employment of firemen on freight trains drawn by diesel locomotives, and on November 26, 1963, the said Board of Arbitration rendered its award, a true and correct copy of which, together with the opinions of the members of said Board, is set forth as an exhibit attached to the complaint. In and by the terms of said award, the said Board found that firemen are not necessary for safety or other purposes on freight trains drawn by diesel locomotives and provided for the elimination of firemen from such trains, including said freight trains operated by plaintiffs in or through the State of Nevada, at the times and in the manner therein set forth. Each of the plaintiffs has given to the local chairman of the union representing firemen in each fireman-seniority district a list of pool and regularly assigned engine

---

[1] In his brief and oral argument respondent has relied only on the first ground mentioned. The motion states other grounds, but such additional grounds are simply argumentative and require no consideration. This opinion, then, is restricted to the first ground above named.

crews, as provided in Part II–B(1) of said award, and plaintiffs intend to, and will, proceed in the manner prescribed by said award with the elimination of firemen from diesel-powered freight trains operated by them in or through the State of Nevada unless precluded from doing so by said Nevada Full Crew Law.

The complaint then alleges that certain questions as to the construction and validity of the said Nevada Full Crew Law have arisen between plaintiffs on the one hand and defendant on the other, more particularly: that plaintiffs contend that the requirement that a fireman be employed relates to trains drawn by steam locomotives and, properly construed, does not require the employment of a fireman on a diesel freight locomotive operating with a head brakeman stationed in the cab; and that if said Nevada Full Crew Law were construed to require the employment of a fireman on a diesel freight locomotive operating as aforesaid, such requirement would deprive plaintiffs of their property without due process of law in violation of Art. 1, § 8, of the Nevada Constitution; that the defendant, as attorney general of the State of Nevada, on or about May 18, 1964, issued his opinion No. 137, directed to the chairman of the Public Service Commission of the State of Nevada, to the effect that unless and until the courts shall have held otherwise, the said Nevada Full Crew Law be treated as requiring the employment of firemen of freight engines drawn by diesel locomotives and operated by plaintiffs.

(1) Thus it is clear that there was a justiciable controversy and a complaint for declaratory relief was in order. Kress v. Corey, 65 Nev. 1, 189 P.2d 352; Clark County v. State, 65 Nev. 490, 199 P.2d 137.

(2) The second and main issue for determination is whether the Nevada Full Crew Law enacted in 1913 (Stats. Nev. 1913, ch. 74,[2] now NRS 705.390), the pertinent portion of which is quoted supra, may be properly

---

[2]It had its origin in earlier statutes. (See Stats. Nev. 1909, ch. 74; Stats. Nev. 1911, ch. 18, ch. 204.)

applied to diesel engines pulling freight trains. In Western Pacific R.R. Co. v. State, 69 Nev. 66, 241 P.2d 846, 45 A.L.R.2d 436, this court held in 1952 that the statute did not require employment of a fireman on a passenger car (therein known as and called "Budd car") propelled by a diesel engine. Respondent seeks to distinguish this case by reason of the fact that the Budd car was a single, self-propelled passenger car. However, the opinion of this court in that case shows that the decision is not restricted to a single car train but applies particularly to diesel locomotives such as are employed on the trains that are dealt with here. We held in the Western Pacific case that the statute passed in 1913 "must be accorded a meaning compatible with the conditions and circumstances then existing and 'the plain, evident policy and purview of the act.' " Id. 69 Nev. 68, 241 P.2d 847.

In the Full Crew Law of Nebraska discussed in Bressler v. Chicago & N.W. Ry. Co., 152 Neb. 732, 42 N.W.2d 617, 619, we quoted the Supreme Court of Nebraska as follows:

" '* * * the act provides that passenger trains, depending on their size, must always be manned and operated by a certain number of employees classified according to the duties they perform. By so doing the Legislature recognized that in order to secure the maximum of safety in the operation thereof certain duties must always be performed by someone qualified to perform them. The act does not actually specify what these duties are but, in the absence thereof, it can only mean such duties as are generally associated with such positions by custom and practice.' "

We then referred to the 1913 act and recognized the legislative intent "that in the proper operation of a railroad certain duties must in the interest of public safety be regularly performed; that they must be performed by qualified persons; that a sufficient crew must be provided so that one member need not assume the duties ordinarily assigned to another where such assumption would interfere with the regular performance of his own essential duties."

We then added:

"By the language which is used the legislature indicated that it was the performance of essential duties with which it was concerned.

* * * * *

"To impute to the legislature an intent to require employment of a fireman in the absence of such duties would in effect be to impute an intent that these duties continue to be performed notwithstanding conditions rendering them wholly unnecessary. In the light of the language used and since the express purpose of the act is public safety, this would indeed be an absurd result."

The opinion continued: "The duties [of the railroad fireman] divided themselves into two classes: fueling and lookout.

"As to the first: The steam, source of the propulsion power of the steam locomotive, is generated in a horizontal boiler from water brought to the boiling point by the application of heat from a fire maintained in a firebox located at the rear of the boiler and opening into the cab of the locomotive. Historically, wood was the first fuel used to feed the fire, later supplanted by coal and, still later in some locomotives, by oil. To furnish a supply of the fuel, a vehicle known as a tender is towed behind the locomotive. The duties of the fireman in wood or coal-fired locomotives are to feed the fuel to the fire, and to make sure that there is a proper level of water in the boiler."

We then discussed the development of the automatic stoker and the later development of the oil-fired locomotive, both of which required the performance of particular duties by the fireman. The opinion in Western Pacific then continued as follows:

"As to the second: The location of the steam boiler to the front of the cab creates an obstruction to the vision of anyone occupying the cab. The engineer's station is on the right of the cab and without deserting his controls it is impossible for him to observe the left

side of the track or of the train. The fireman thus is given the responsibility of being 'the eyes and ears of the engineer on the left side of the train.' When not occupied with fueling duties, his lookout duties are constant.

\* \* \* \* \*

"In operation of the Budd railroad Diesel car no fueling duties are required of any crew member. There is no fire to maintain for steam pressure. There is no water level to watch. The engines, similar to those used on many busses, are located underneath the car and are inaccessible from the cab. The fueling, as in gasoline engines, is automatic. Likewise the essential lookout duties as known to typical steam operation do not exist in the Budd car. There is no boiler to obstruct the engineer's view. The cab is located at the very front of the car. Through four windows to the front and side of the cab and two rearview mirrors, the engineer from his seat has an unobstructed view to the front, side and rear, superior to the combined views of both engine crewmembers when stationed behind a steam boiler. It is clear that the essential duties of the fireman as known to the 1913 legislature no longer remain to be performed in the Budd car."

These conditions apply equally with reference to diesel engine drawn freight trains. We thereupon referred with approval to Railroad Commission v. Texas & New Orleans R. Co., Tex.Civ.App., 42 S.W.2d 1091, and Moredick v. Chicago & Northwestern Railway Co., 125 Neb. 864, 252 N.W. 459, as being directly in point.

The annotation to this case in 45 A.L.R.2d 436, et seq., collects other cases and fully sustains our Western Pacific holding. See particularly Northern Pacific Railway Co. v. Weinberg, DC Minn., 53 F.Supp. 133; Oregon, C. & E. R. Co. v. Blackmer, 154 Or. 388, 59 P.2d 694.

(3) It is contended by respondent that Nevada's re-enactment of the statute in 1957 and 1963 displaces

or removes the conclusion in Western Pacific v. State as to the intention of the legislature in 1913, as appellants were utilizing diesel engines prior to 1963. However, under well-recognized rules of construction, the legislature in re-enacting the law in 1963 did so with the interpretation placed upon it by this court in 1952 in the Western Pacific case. This is the clear holding in Railroad Commission v. Texas & New Orleans R. Co., Tex.Civ.App., 42 S.W.2d 1091, where such a situation is discussed at great length. Almost 20 years later the Texas case was approved in Bressler v. Chicago N.W. Ry. Co., 152 Neb. 732, 42 N.W.2d 617, and was referred to as containing "a very full and complete discussion of this same question." It may be noted that the Bressler case asserts as an additional reason for holding an earlier interpretation of the legislative intent to be proper that "there have been numerous sessions of the legislature when it could have specifically [otherwise] provided." And such is the case here.

(4) Respondent argued that such holding by this court would be in effect a judicial repeal of a legislative act and in violation of the constitutional separation of powers. Such however is not the case. The act is still effective as to trains with steam engines.

(5) In our conclusion that the 1913 act requiring a fireman to be in the cab with the engineer does not apply to diesel engines where an available and qualified head brakeman can perform all the duties necessary to the safety of the public and the crew, it becomes unnecessary for us to pass on appellants' contention that if the act applied to diesel engines it would violate the constitutional requirements as to due process. We may remark, however, that our language in Western Pacific strongly indicated that such would be the case, and that it would likewise be an unreasonable and unlawful exercise of the police power.

The order of the district court sustaining the motion to dismiss was error and is hereby reversed. The cause

is hereby remanded with directions to deny the motion to dismiss the complaint and for further proceedings not contrary to the view herein expressed.

McNAMEE and THOMPSON, JJ., concur.